STATE OF CONNECTICUT *v.* VINCENT JONES
(AC 24593)

Schaller, DiPentima and Gruendel, Js.

Argued November 16, 2006—officially released January 16, 2007

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Proloy K. Das*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. Colombo, Jr.*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Vincent Jones, appeals from the judgment of conviction, rendered after a court trial, of possession of narcotics in violation of General Statutes § 21a-279 (a),[1] sale of narcotics in

---

[1] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned . . . ."

violation of General Statutes § 21a-277 (a)[2] and sale of narcotics within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).[3] The defendant claims evidential insufficiency and an equal protection violation. We affirm the judgment of the trial court.

At the conclusion of trial, the court found the following facts. "On or about March 10, 2001, members of the Stamford police department were conducting a surveillance related to . . . suspected narcotics activity near the intersection of Sellick and Orchard Streets in Stamford, which is near the Southfield Village housing complex [Southfield Village]. [A]t that time, an individual

---

[2] General Statutes § 21a-277 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[3] General Statutes § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place. For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

. . . approached Officer [Timothy] Shaw, who was in an unmarked car in plain clothes working in an undercover capacity. . . . [T]his individual was later determined to be, and the court finds, was in fact the defendant.

"The defendant offered to sell Officer Shaw a quantity of narcotics. Shaw gave the defendant money to go get . . . the drugs. Shaw held the defendant's license, which was given to him by the defendant apparently as a gesture that the defendant would in fact return with the drugs. The defendant did in fact return just a short time later with the narcotics, crack cocaine, which he gave to Shaw. . . .

"Shaw made also an in-court identification of the defendant as the person who delivered the drugs to him. The drugs later were tested and found to be crack cocaine, a narcotic. The approximate weight was about .17 grams. Also, the activity described occurred within 1500 feet of Southfield Village . . . a public housing project, within the meaning of that phrase under our statutes.

"Finally, the defendant has offered evidence that he was drug-dependent at the time of the offense, and the court finds after considering the evidence, including the testimony and report of Dr. Jeremy August, that the defendant has in fact established by a preponderance of the evidence that he was drug-dependent at the time."

Accordingly, the court found the defendant guilty of possession of narcotics and sale of narcotics within 1500 feet of a public housing project. Because it found that the defendant was a drug-dependent person, the court found him not guilty of the charge of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), instead finding him guilty of the lesser included offense of sale of narcotics in violation § 21a-277 (a). The court thereafter

sentenced the defendant to a total effective term of nine years incarceration, followed by five years of special parole. This appeal followed.

I

The defendant first claims that the evidence was insufficient to establish that Southfield Village is a public housing project. "In reviewing claims of insufficiency, we first review the evidence presented at trial and construe it in the light most favorable to sustaining the trial court's finding of guilt. . . . We then look at the facts established at trial and the reasonable inferences drawn from those facts and decide whether the court could have reasonably concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . Our standard in reviewing the conclusions of the trier of fact is limited. . . . We will construe the evidence in the light most favorable to sustaining the trial court's judgment and will affirm the court's conclusions if reasonably supported by the evidence and logical inferences drawn therefrom. . . .

"The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We give deference to the unique opportunity of the trier of fact to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility. . . . The trial court's findings of fact are entitled to great weight . . . but those findings are not conclusive." (Citations omitted.) *State* v. *Miranda*, 41 Conn. App. 333, 337–38, 675 A.2d 925 (1996).

At trial, the court heard the testimony of Shaw. Four times during his testimony, Shaw stated that Southfield

Village is a public housing project. The defendant made no objection to Shaw's testimony, nor did he request an offer of proof as to Shaw's qualifications to so testify. He likewise did not cross-examine Shaw as to the statement that Southfield Village was a public housing project. As in *State* v. *Jeffreys*, 78 Conn. App. 659, 681, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003), the court thus "had before it an unchallenged affirmative statement that the apartment complex at issue was a public housing project."

The court also heard the testimony of Steven DeVito of the Stamford housing authority. DeVito testified repeatedly that Southfield Village is a public housing project and that it was owned and operated by the Stamford housing authority.

The defendant argues on appeal that DeVito opined that Southfield Village was operated by a for-profit management corporation. During cross-examination, DeVito testified otherwise. In response to defense counsel's query as to whether DeVito had testified that Southfield Village was *operated* by a private management company, DeVito stated: "I didn't. If I said operated by, that was a mistake. It is managed day to day by a for-profit company." DeVito maintained that Southfield Village was operated by the Stamford housing authority.

The defendant also refers to DeVito's testimony that Southfield Village is "a mixture of market rate and low income" as conclusive evidence that the property is not a public housing project. General Statutes § 8-39 (i) defines "housing project" in relevant part as "decent, safe and sanitary urban or rural dwellings, apartments or other living accommodations for families of low or moderate income . . . ." Although § 8-39 (i) requires a housing project to provide living accommodations for families of low or moderate income, it does not

expressly require that one must provide such accommo-dations *exclusively* for families of low or moderate income. The defendant has provided this court with no authority or analysis indicating otherwise.[4] It is well established that analysis, rather than abstract assertion, of claims is a prerequisite to appellate review. See, e.g., *State* v. *Pink*, 274 Conn. 241, 256, 875 A.2d 447 (2005); *Valentine* v. *LaBow*, 95 Conn. App. 436, 452, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). Moreover, DeVito, aware of the "mixture of market rate and low income" at Southfield Village, nevertheless testified that it was a public housing project.

Construing the evidence in the light most favorable to sustaining the judgment, we conclude that the court's determination that Southfield Village is a public housing project is reasonably supported by the evidence.

## II

The defendant next contends that his conviction under § 21a-278a (b) violates his right to equal protection because it does not exempt persons who are drug-dependent from receiving a mandatory minimum sentence as do other similar provisions of our Penal Code. The record before us reveals that the defendant never presented that claim to the trial court. "Connecticut law is clear that a party seeking review of unpreserved claims under either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), must affirmatively request such review." *State* v. *Wheatland*, 93 Conn. App. 232, 243–44, 888 A.2d 1098, cert. denied, 277 Conn. 919, 895 A.2d 793 (2006). The defendant has not done so in the present case. His claim, therefore, fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The defendant has not raised an issue of law regarding General Statutes § 8-39 (i) or public housing projects generally. His claim is one of evidential insufficiency.