STATE OF CONNECTICUT *v.* ROBERT TOZIER, JR.
(AC 33210)

Beach, Alvord and Espinosa, Js.

Argued March 15—officially released July 10, 2012

*Gerald M. Beaudoin,* with whom, on the brief, was *Francisco A. Cardona,* for the appellant (defendant).

*Laurie N. Feldman,* special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Dennis O'Connor,* former senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Robert Tozier, Jr., appeals from the judgment of conviction, rendered following a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (4).[1] The defendant claims that (1) the evidence

---

[1] The defendant was found guilty under counts one and three of the state's four count substitute information. The court imposed a sentence of seven years of incarceration followed by ten years of special parole with other conditions. Each count encompassed two theories of culpability. Count one charged the defendant with sexual assault in the first degree in that he engaged in vaginal intercourse, involving the use of an object, with the victim by the use of force in violation of § 53a-70 (a) (1), and while the victim was mentally incapacitated in violation of § 53a-70 (a) (4). Count three charged the defendant with sexual assault in the first degree in that he engaged in cunnilingus with the victim by the use of force in violation of § 53a-70 (a) (1), and while the victim was mentally incapacitated in

did not support the jury's finding of guilt; (2) the court's jury charge did not require the state to prove each and every element of the crimes of which he was convicted and, thus, deprived him of his due process right to a fair trial; (3) General Statutes §§ 53a-70 (a) (4) and 53a-65 (5) are unconstitutionally vague, both facially and as applied to him and (4) the court, following an in camera review of the victim's counseling records, improperly failed to disclose such records and denied his motions for a new trial and for a mistrial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts.[2] After 9 p.m. on the evening of November 24, 2008, the female victim visited a friend, A, at the home of A's friend, B, and B's boyfriend, the defendant. For approximately the next one to one and one-half hours, the victim spent time talking with A in the defendant's presence in the living room. At times relevant, A's daughter, B and B's daughter were upstairs asleep. The victim drank one half of a can of beer as well as a shot of rum, neither of which caused her any adverse physical or mental effects. At some point after 10:30 p.m., the defendant prepared beverages for the victim and A that they had not solicited. The defendant gave

violation of § 53a-70 (a) (4). On these counts, the jury found the defendant not guilty of committing the offenses by means of the use of force.

Additionally, the jury found the defendant not guilty of sexual assault in the first degree by engaging in anal intercourse with the victim, with the use of an object, in violation of § 53a-70 (a) (1) and (4), as alleged in count two. Finally, the jury found the defendant not guilty of attempt to commit sexual assault in the first degree by attempting with the use of force to compel the victim to submit to attempted anal intercourse with the use of an instrument in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), and by attempting to perform anal intercourse on the mentally incapacitated victim by the use of an instrument in violation of §§ 53a-49 (a) (2) and 53a-70 (a) (4).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

the victim a glass she believed to contain rum and Coke. The victim consumed only one half of the beverage and perceived that it had an unusual, or "funny," taste. The defendant gave A a clear beverage she believed to contain Sprite and vodka. A consumed a small amount of the beverage and noticed that it had small black particles in it and had an unusual taste.

In a short time, the victim and A experienced adverse physical effects. A experienced a deterioration in her motor skills and felt very tired. A went upstairs and fell asleep. The victim suddenly felt very intoxicated and tired, and she lost track of events. At one point, she woke up on the sofa in the living room and vomited in the living room and a bathroom. The defendant cleaned up the victim's vomit and told her that he would not tell anyone that she had been sick. The defendant gave the victim another red colored beverage that had an unpleasant taste. He told her that it would improve her condition. After consuming some of the beverage, the victim lost track of events for an additional period of time.

The victim spent the night on the sofa in the living room. During the night, the defendant partially removed the victim's pants and inserted a plastic sex toy into the victim's vagina, causing her a great deal of pain. Thereafter, the defendant performed cunnilingus on the victim before inserting the plastic sex toy into her vagina once again. During these events, the victim experienced a sensation of paralysis that left her unable to move or to call for help. After the victim fell asleep for a brief period of time, she awoke to find that the defendant had removed one leg of her pants and, with his penis beneath her legs, moved as though he was engaging in sexual intercourse with her. The defendant said to the victim, "You know you like it" and "you know you like this, bitch." Due to the sensation of paralysis that she experienced, the victim was unable

to move. Then, the defendant clothed the victim and told her that what had occurred that night would be their secret and that he would not tell anyone about it.

The victim remained unable to move or to speak; she was aware of what was occurring around her but felt numb and as though she was in a coma. She fell asleep and awoke the next morning having regained the ability to move and to speak, but she was either unsure or could not immediately recall the events that had occurred during the overnight hours involving the defendant. The victim returned home. She felt physical discomfort in her private parts as a result of the defendant's sexual activities. Gradually, she recalled with greater clarity the events that had occurred. Over the next few days, she spoke with A and B about these events and ultimately reported the incident to the police. A medical examination performed three days following the incident revealed bleeding from the victim's cervical opening. Additional facts will be set forth as necessary.

I

First, the defendant claims that the evidence did not support the jury's finding of guilt.[3] We disagree.

After the state concluded its case-in-chief, the defendant moved for a judgment of acquittal. The defendant's

---

[3] On appeal, the defendant couches this claim in terms of the trial court's failure to grant his motion for a judgment of acquittal. The problem with couching the claim in this manner, however, is that, on appeal, the defendant's evidentiary insufficiency arguments are broader than those that he raised in his motion for a judgment of acquittal. Although the newly raised arguments are unpreserved, we observe that they are reviewable on appeal absent recourse to any extraordinary level of review because "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right" and would be entitled to extraordinary review. *State* v. *Adams*, 225 Conn. 270, 276 n.3, 623 A.2d 42 (1993). Thus, regardless of whether the arguments raised on appeal were raised at trial, we will address all of the defendant's arguments concerning evidentiary insufficiency.

attorney argued that § 53a-65 (5), which defines "mentally incapacitated" as that term is used in § 53a-70 (a) (4), plainly required the state to identify the substance that the defendant allegedly administered to the victim. The court denied the motion. The defendant's attorney renewed the motion following the defendant's case-in-chief. Again, the court denied the motion. Following the defendant's conviction, he filed a written motion for judgment of acquittal in which he argued that the state failed "to prove precisely what drug or substance the [victim] was given." He argued that the jury based its finding of guilt solely on the "uncorroborated word of the [victim]" and speculative expert testimony that certain drugs that were difficult for a layperson to obtain could have resulted in the symptoms allegedly experienced by the victim. Once more, the court denied the motion.

On appeal, the defendant does not dispute that there was evidence demonstrating that he had sexual intercourse with the victim.[4] Reiterating arguments similar to those that he raised at trial, the defendant argues that, although there was evidence that the victim consumed beverages that the defendant provided to her, there was no evidence of what was contained in those beverages. The defendant observes, accurately, that there was no scientific evidence of what substances were in the victim's body during the events in question. Blood and urine samples performed on the victim days after the incident did not reveal the presence of any suspicious substances. The state presented expert testimony from Robert Powers, the director of the controlled substances and toxicology laboratory at the state department of public safety. Powers opined to a reasonable degree of scientific probability that the progression of symptoms described by the victim was consistent with

[4] The defendant testified at trial that he and the victim engaged in consensual sexual intercourse during the events in question.

the ingestion of several types of drugs such as gamma hydroxybutyrate (GHB) and ketamine, but that it was highly unlikely that these substances would be detectable days following their ingestion. The defendant emphasizes that Powers did not testify that the victim's symptoms were in fact brought about by her ingestion of any specific drug or intoxicating substance. Furthermore, for the first time on appeal, the defendant argues that the state did not present evidence that the victim had been rendered temporarily incapable of appraising or controlling her conduct. In this vein, the defendant emphasizes the evidence that during the events in question, the victim willingly ingested beverages that had an unusual taste and that caused her to feel intoxicated and tired.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating the evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require

acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"[An] appellate court's first task, in responding to a claim of evidentiary insufficiency, is to apply the traditional scope of review to the evidence. That requires that . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (4) engages in sexual intercourse with another person and such other person is mentally incapacitated to the extent that such other person is unable to consent to such sexual intercourse." Section 53a-65 (5) provides: " 'Mentally incapacitated' means that a person is rendered temporarily incapable of appraising or controlling such person's conduct owing to the influence of a drug or intoxicating substance administered to such person without such person's consent, or owing to any other act committed upon such person without such person's consent."

As a preliminary matter, we reject the defendant's novel contention that the state bore the burden of demonstrating that any *specific* or *identifiable* drug or intoxicating substance had been administered to the victim without her consent. There is no reasonable basis for this interpretation of the offense, nor does it find support in our case law. Rather, with regard to the contested element of the offense and consistent with the state's theory of criminal liability, the state bore the burden of proving beyond a reasonable doubt that the victim was under the influence of some drug or intoxicating substance.

There was ample circumstantial evidence that the beverages provided to the victim by the defendant contained some drug or intoxicating substance. Specifically, there was testimonial evidence that beverages provided to the victim and A, in contrast to the other beverages they had consumed that night, adversely affected their physical state. It is not insignificant that the victim and A experienced a somewhat simultaneous deterioration in their physical state after having consumed the beverages, as A's similar deterioration in her overall abilities corroborates the evidence that the victim was provided a drug or intoxicating substance. Also, A observed small black particles in her clear beverage. From this evidence, the jury reasonably could infer that the defendant, who prepared and served the beverages at issue, added a drug or intoxicating substance to them. Likewise, the testimony concerning the defendant's reaction to the victim's physical condition, especially his sexual conduct toward the victim, tended to demonstrate that the victim had ingested a drug or intoxicating substance provided to her by the defendant. The defendant gave the victim beverages that she did not request, had sexual intercourse with the victim while she was unable to speak or to move and, later, replaced the victim's clothing and told her that their

activities were a secret. These events strongly suggest that the defendant had a plan and a motive to render the victim mentally incapacitated for the purpose of sexually assaulting her and, thus, corroborate a finding that she had been given a drug or intoxicating substance by the defendant.

Additionally, Powers testified to a reasonable degree of scientific probability that the victim's symptoms were consistent with the ingestion of two types of drugs, GHB and ketamine, and were not consistent with the victim's ingestion of her antidepressant medicine[5] and the three alcoholic drinks the victim consumed on the night in question. Powers opined that it was unlikely that an analysis of the victim's blood and urine, conducted days following the events at issue, would have revealed the presence of the illicit substances at issue. This testimony provided a basis on which the jury reasonably could have found that the blood and urine analysis of the victim did not necessarily weigh in the defendant's favor.

The defendant's argument that the evidence did not support a finding that the victim had been rendered temporarily incapable of appraising or controlling her conduct lacks merit. The state's evidence included unambiguous testimony from the victim that she consumed some of the beverages at issue, she lost consciousness, lost track of time, felt numb, felt like she was in a coma, experienced a sense of paralysis and was physically unable to call for help or to move while the defendant sexually assaulted her. The victim testified that the defendant moved her body back and forth to facilitate dressing her, and that she experienced a loss of memory of relevant events until hours after she returned home. The victim's testimony amply demonstrated that she was rendered temporarily incapable

---

[5] Additionally, there was evidence that the victim was under the influence of cold medication at or around the time of the events in question. There was no evidence that it caused her incapacity.

of appraising or controlling her conduct. It is of no consequence to our analysis that the victim testified that she willingly drank the beverages provided to her by the defendant when, as the jury reasonably could have found, she was wholly unaware that they contained a drug or intoxicating substance. The fact that the victim was able to consume a beverage of her own volition does not make it less likely that a substance in the beverage later rendered her temporarily unable to control her conduct. Accordingly, we reject the defendant's sufficiency of the evidence claim.

## II

Next, the defendant claims that the court's jury charge did not require the state to prove each and every element of the crimes of which he was convicted and, thus, deprived him of his due process right to a fair trial. We disagree.

The defendant's claim of instructional error concerning § 53a-70 (a) (4) is multifaceted. The defendant claims that the court's instruction was deficient in that it failed to instruct the jury that the state had the burden of proving beyond a reasonable doubt "that the [victim] was *administered* a drug or intoxicating substance" and that the victim had "[a] *lack of knowledge* that she was administered a drug or intoxicating substance . . . ." (Emphasis in original.) Additionally, the defendant argues that "a finding of fact should have been required as to which *drug(s) or substance(s)* were administered to the [victim]." (Emphasis in original.) In this regard, the defendant argues: "In order for a jury to make a finding that a drug or intoxicating substance had been administered to the [victim], proof and a finding of fact as to the *identity* of such drug or substance would necessarily be required. To make such a finding, the jury would have to know that whatever may have been administered to the [victim] was, *in fact,* a drug or intoxicating substance." (Emphasis in original.)

Thereafter, in a similar, conclusory manner, the defendant asserts that the court "oversimplified the law" by reducing the state's burden to two components: (1) proof beyond a reasonable doubt that the defendant engaged in sexual intercourse with the victim and (2) proof beyond a reasonable doubt that, at the time of the sexual intercourse, the victim was mentally incapacitated and unable to consent to the intercourse.

The defendant did not preserve this claim for appellate review as he did not submit a written request to charge covering the elements of § 53a-70 (a) (4) or object to the court's charge after it was given and distinctly raise these arguments before the trial court. See Practice Book § 42-16. The defendant urges us to conclude that the court committed plain error. The state argues that the claim is not reviewable because the defendant abandoned the claim by virtue of inadequate analysis of the claim. Alternatively, the state asserts that, in accordance with our Supreme Court's holding in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), the defendant is not entitled to relief because he waived any objection to the court's instruction.

As a preliminary matter, we observe that the defendant's analysis of this claim is lacking. Although the defendant makes several assertions concerning the essential elements of § 53a-70 (a) (4), he does not support these assertions by means of statutory analysis or citation to relevant authority. The defendant concludes his analysis of the claim by stating that this court should determine that the trial court committed plain error. Beyond a citation to Practice Book § 60-5, the authorities cited in the analysis of the claim do not pertain to plain error review, but to review of constitutional challenges to trial court jury instructions. We are not required to review issues that have been inadequately

presented to this court. "It is well established that analysis, rather than abstract assertion, of claims is a prerequisite to appellate review." *State* v. *Jones*, 99 Conn. App. 196, 202, 912 A.2d 1099, cert. denied, 281 Conn. 927, 918 A.2d 279 (2007).

Alternatively, even if we were to overlook the deficiencies in the presentation of this claim, we would not conclude that plain error exists. The record reveals that the court provided a written copy of its proposed charge to the parties on August 6, 2010. On August 10, 2010, the court held a charge conference with the parties and solicited "comments or requests" from the parties concerning the charge. The defendant's attorney raised an issue concerning the charge and raised questions concerning jury interrogatories, but did not challenge the court's instruction on § 53a-70 (a) (4). Also on that same date, the court delivered a portion of its charge that included the challenged instructions. On August 11, 2010, before concluding its charge, the court, outside the presence of the jury, asked counsel if there were "[a]ny preliminary issues" to address. The defendant's attorney replied, "No, Your Honor." After the court concluded its charge, it asked the parties if there were any exceptions, suggested corrections or suggested additions to its charge. The prosecutor stated that there were none, to which the defendant's attorney stated, "Agreed."

It is well established in our case law that a valid waiver of a claim of instructional error thwarts plain error review.[6] See *State* v. *Kitchens*, supra, 299 Conn.

---

[6] "The plain error doctrine is a rule of reversibility reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to

474 n.18. In *Kitchens*, our Supreme Court recognized that "Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them." Id., 480. We conclude that this case fits into this category of implicit waiver. There is no dispute that, days before the court delivered its charge, the court afforded the defendant a meaningful opportunity to review the instructions of which he now complains. On the basis of our close examination of the facts of this case, we conclude that the representations of the defendant's attorney reflected acquiescence in those instructions. Rather than merely not taking an exception to the instructions, the defendant's attorney, when asked to bring any concerns about the charge to the court's attention, affirmatively represented that he did not have any relevant concerns. Because the defendant affirmatively accepted the instructions at trial, we cannot conclude that plain error exists.

### III

Next, the defendant claims that §§ 53a-70 (a) (4) and 53a-65 (5) are unconstitutionally vague, both facially and as applied to him. We disagree.

The defendant appears to claim that §§ 53a-70 (a) (4) and 53a-65 (5) are vague in that they did not adequately lead him to comprehend that his conduct was prohibited. He asserts that these statutes "do not require any proof as to *who* administered the drug or intoxicating substance to the [victim], nor do they even require that the defendant knew, or had reason to know, that the [victim] was mentally incapacitated." (Emphasis in original.) The defendant argues that, insofar as criminal

reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 618, 999 A.2d 752 (2010).

liability may be imposed after a third party administered a drug or intoxicating substance to a victim, the statutes do not require that a person charged with the offense be aware of that fact at the time that he or she engaged in sexual intercourse with such victim.

The defendant acknowledges that this claim is unpreserved and seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Stewart*, 77 Conn. App. 393, 403, 823 A.2d 392 ("a claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning"), cert. denied, 265 Conn. 906, 831 A.2d 253 (2003). The defendant is unable, however, to satisfy *Golding*'s third prong because he is unable to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

"The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute. . . .

"The defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . The proper test for determining [whether] a statute is vague as applied is

whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Internal quotation marks omitted.) *State* v. *Nasheed*, 121 Conn. App. 672, 685, 997 A.2d 623, cert. denied, 298 Conn. 902, 3 A.3d 73 (2010). "A determination of statutory vagueness is a question of law over which we exercise de novo review. . . . In undertaking such review, we make every reasonable presumption in favor of the statute's validity." (Citation omitted.) *State* v. *LaFontaine*, 128 Conn. App. 546, 550, 16 A.3d 1281 (2011).

A careful review of the defendant's arguments reveals that he does not argue that §§ 53a-70 (a) (4) and 53a-65 (5), when read together, did not clearly prohibit a person from having sexual intercourse with a mentally incapacitated victim who was unable to consent to such intercourse. Essentially, the defendant argues that these statutory enactments are vague because they do not require a showing that the criminal actor administered the drug or intoxicating substance that caused a victim's mental incapacity[7] and do not require a showing that the criminal actor knew, or had reason to know, that a victim was mentally incapacitated at the time that he or she engaged in sexual intercourse with the victim. That the statutes do not encompass such proof does not reflect any ambiguity in either §§ 53a-70 (a) (4) or 53a-65 (5). Rather, it reflects that criminal liability does not require a showing that the criminal actor administered the drug or intoxicating substance at issue or that

---

[7] In so doing, the defendant draws our attention to analogous statutory enactments in other jurisdictions in which such a showing is an essential element of criminal liability.

the criminal actor knew, or had reason to know, that a victim was mentally incapacitated.[8]

To the extent that the defendant claims that the definition of the offense is vague because it leaves open the possibility that a criminal actor did not administer the drug or intoxicating substance, was unaware that a third party had administered such drug or intoxicating substance or was unaware that the victim was mentally incapacitated at the time that he or she engaged in sexual intercourse with the victim, we observe that none of these concerns arise in the present case. The state tried the case on the theory that, unbeknownst to the victim, the defendant administered a drug or intoxicating substance to her for the purpose of causing her mental incapacity. Then, having rendered her unable to consent, the defendant engaged in sexual intercourse with her. On this record, there can be no dispute that the jury's finding of guilt was premised on a finding that the defendant engaged in conduct that plainly was prohibited by the statutes at issue. The defendant has not demonstrated beyond a reasonable doubt that the statutes, as applied to him, deprived him of adequate notice that his conduct was unlawful or that a reasonable person of ordinary intelligence would have any doubt that his conduct toward the victim was prohibited. Accordingly, the defendant's vagueness challenge fails.

---

[8] Consistent with the fact that knowledge of a victim's mental incapacity is not an essential element of the crime, we note that our legislature enacted General Statutes § 53a-67 (a), which provides in relevant part: "In any prosecution for an offense under this part based on the victim's being . . . mentally incapacitated . . . it shall be an affirmative defense that the actor, at the time such actor engaged in the conduct constituting the offense, did not know of such condition of the victim." Plainly, if the legislature intended that an actor's knowledge of a victim's mental incapacity was an essential element of the crime, this affirmative defense would be superfluous because, without a showing that an actor had such knowledge, proof of such essential element would be lacking and criminal liability could not be imposed on the actor.

## IV

Finally, the defendant claims that the court, following an in camera review of the victim's counseling records, improperly failed to disclose such records and denied his motions for a new trial and for a mistrial. We disagree.

The record reflects that, on July 12, 2010, prior to the start of the trial, the defendant, relying on *State* v. *Bruno*, 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), and *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984), filed a motion requesting an in camera review of the psychiatric and mental health records of the victim. The defendant did not pursue the motion after it was filed. On October 13, 2010, following the jury's verdict, the defendant filed a motion for a mistrial and a motion for a new trial. In both of these motions, the defendant represented that he had not pursued the motion requesting an in camera review of the psychiatric and mental health records of the victim because the state had represented that the victim "was not and had not been engaged in treatment or counseling" for mental illness. The defendant represented, however, that the presentence investigation report provided to counsel on October 12, 2010, indicated that the victim had, in fact, sought counseling and therapy. The defendant argued in the motions that he detrimentally had relied on the state's inaccurate representation.[9] In the motion for a new trial, the defendant explicitly asserted that his reliance deprived him of his right to confront his accuser.

---

[9] Additionally, he argued that the records could have contained "exculpatory impeachment material" and, thus, their nondisclosure by the state violated his due process right to a fair trial under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny. The court did not independently address the *Brady* claim, and there is no claim under *Brady* in this appeal.

The court heard argument on the motions. The prosecutor represented on the basis of his inquiry into the matter that the reference to counseling in the presentence investigation report pertained to the victim's interactions with a counselor associated with a victim support group. The interactions occurred after the events at issue at trial and consisted of two face-to-face meetings between the victim and the counselor, as well as two telephone conversations. The prosecutor represented that, to his knowledge, the counselor received some level of training but was not a professional in psychiatry and, in fact, did not hold a college degree.

The prosecutor informed the court that, although he did not believe that the materials related to this type of counseling fell under the ambit of *Bruno* and *Esposito*, he obtained the victim's permission to submit to the court for in camera review the records related to the counseling. Further, he obtained the victim's permission for the court to divulge to counsel any information from those records in the event that it deemed such information to be relevant to the defendant's pending motions. After hearing those representations, the court stated that it carefully would review the victim's trial testimony and review the records at issue in accordance with the dictates of *Bruno* and *Esposito*. The court stated that it would disclose any relevant information and, otherwise, seal the records. The defendant's attorney agreed with the court's procedure for reviewing the records.

At a later proceeding, the court stated: "There was a motion made by the defendant which required some investigation; some documents were produced pursuant to a waiver by the [victim] in the case. I examined the [documents] also with the [victim's] permission pursuant to a waiver, and I presided over the case, and there is nothing exculpatory in the documents, they're

very brief. I don't want to describe them in detail; I'll order them sealed and made part of the record for purposes of appellate review. There is nothing exculpatory. There is nothing that could be used to impeach the credibility of the defendant on cross-examination. So the motion for mistrial is denied."

On appeal, the defendant, referring to the precise language of the court's ruling as quoted in the preceding paragraph, argues that the court improperly reviewed the records to determine if they included material that could have been used to impeach *his* credibility, rather than that of *the victim*. The defendant argues that the court abused its discretion by failing to disclose the records and asks this court to review the records for the purpose of determining whether the court's ruling reflected an abuse of discretion.[10]

"Connecticut has a broad psychiatrist-patient privilege that protects the confidential communications or records of a patient seeking diagnosis and treatment. . . . Our Supreme Court has held that records and communications between a sexual assault victim and a sexual assault counselor are similarly protected and subject to the *Esposito-Bruno* procedure before such information may be disclosed to the defendant. . . .

"The victim's right to privacy in such cases, however, often directly conflicts with the defendant's right to confront the state's witnesses. The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. . . . It is expressly protected by the sixth and fourteenth amendments to the United States constitution . . . and by article first, § 8, of the

---

[10] The defendant also asserts, without further explanation, that the court "applied an incorrect standard of review during its in camera inspection of the [victim's] counseling records." It is unclear if this argument is distinct from the other arguments raised by the defendant.

Connecticut constitution. . . . The defendant is guaranteed more than an opportunity to confront witnesses physically. . . . The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him . . . and to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witnesses." (Internal quotation marks omitted.) *State* v. *DeJesus*, 91 Conn. App. 47, 73–74, 880 A.2d 910 (2005), rev'd in part on other grounds, 288 Conn. 418, 953 A.2d 45 (2008).

In *Esposito*, our Supreme Court struck a balance between the confidentiality of psychiatric records and the defendant's right to confrontation, concluding: "If . . . the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event

of refusal." *State* v. *Esposito*, supra, 192 Conn. 179–80; see also *State* v. *Bruno*, supra, 197 Conn. 329–30.

"On review, we must determine whether the court's decision constituted an abuse of discretion. . . . This court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release those records to the defendant. . . . While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." (Citations omitted; internal quotation marks omitted.) *State* v. *Delgado*, 64 Conn. App. 312, 319, 780 A.2d 180 (2001), aff'd, 261 Conn. 708, 805 A.2d 705 (2002).

As a preliminary matter, we address the court's statement that it had reviewed the materials and had concluded that they did not contain information that would have been useful to impeach the credibility of the defendant on cross-examination. Viewed in light of the defendant's motions, the court's earlier colloquy with the parties concerning the materials and the court's explicit statement that it was going to review the materials in accordance with *Esposito* and *Bruno,* we are left to conclude that the court merely misstated its conclusion. It appears that the court meant to indicate that the materials did not contain exculpatory information and

did not contain information that would have been useful to impeach the credibility of *the victim* on cross-examination.

We carefully have reviewed the victim's trial testimony and the sealed materials presented to the trial court. We have reviewed the materials for the purpose of determining whether they sufficiently disclose information that would have been useful to the defense and, especially, probative of the victim's reliability. Because we conclude that they do not contain such information, we conclude that the court's decision not to disclose the records did not reflect an abuse of discretion. Likewise, we conclude that, insofar as the defendant's motions for a mistrial and for a new trial were based on the probative value of undisclosed materials, the court properly denied the motions.

The judgment is affirmed.

In this opinion the other judges concurred.