******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KEVIN S. BIALOWAS
(AC 36250)

Gruendel, Beach and Sullivan, Js.

*Argued June 3—officially released October 13, 2015*

(Appeal from Superior Court, judicial district of New London, A. Hadden, J.)

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Stephen M. Carney*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Kevin S. Bialowas, appeals from the judgment of conviction, rendered following a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes (Rev. to 2009) § 14-224 (a). The defendant claims that the court committed plain error by failing to instruct the jury that a defendant's reasonable fear of harm from the victim would be a possible defense to the charge of failing to stop and render assistance under § 14-224 (a). We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, and procedural history are necessary to our consideration of the defendant's claim. The defendant and Jennifer Sanford met in October, 2005, and became romantically involved. Shortly thereafter, they began living together. On January 9, 2008, in an unrelated criminal matter, the defendant was convicted of several tax offenses under General Statutes §§ 12-428 (1) and 12-737 (a), and he was subsequently sentenced to a period of incarceration.

In April, 2009, while the defendant was incarcerated, Sanford began a relationship with the victim, Steven Germano. Sanford and the victim resided together while the defendant was incarcerated. The victim would prostitute Sanford and supported her drug addiction by providing her with heroin.

The defendant and Sanford remained in contact by letter during his period of incarceration, and the two planned to resume their relationship when he was released. The victim was aware of these communications and did not want Sanford to resume her relationship with the defendant upon his release from prison. Upon the defendant's release, he resided in a halfway house, but remained in the custody of the Department of Correction. Sanford provided him with a cell phone, which was considered contraband in the facility.

On the morning of July 14, 2009, Sanford used heroin and then traveled to Cheshire with the victim for work. Later that day, the defendant was released from the custody of the Department of Correction, and he drove to see Sanford at her father's home in Baltic. When the defendant arrived, Sanford was at the residence with her father, her son, and the victim. The victim wanted to fight the defendant, but Sanford intervened and told the victim to leave the premises. The victim drove away in his dark blue truck. Shortly thereafter, Sanford and the defendant left the house in a white Ford pickup truck driven by the defendant. As they approached the end of the driveway, the defendant and Sanford witnessed the victim pass as he travelled toward Norwich. Then, the defendant and Sanford pulled out onto Route

207 and were travelling behind the victim.

At St. Mary's Church in Baltic, the victim pulled off the roadway and allowed the defendant and Sanford to pass him. When the defendant and Sanford passed the victim, he "pulled right out behind [them] and just followed [them]." The defendant increased his speed to see if the victim would follow, and he did. While the two trucks proceeded, the victim called the defendant's cell phone. Sanford answered, and the victim demanded that she exit the defendant's truck. The victim told Sanford that he wanted to fight the defendant and, in response, Sanford said that the defendant was not a fighter. The defendant became distracted while driving and hit a telephone pole, causing damage to his vehicle.

The defendant and Sanford continued to travel in the defendant's truck for approximately fifteen miles from Baltic into Norwich, and the victim continued to follow them in his vehicle. At a stop sign at the Norwichtown Green, the victim pulled his truck in front of the defendant's truck. The victim exited his vehicle and began waving his hands in the air. As the victim approached the defendant's truck, Sanford locked the doors. The defendant reversed his truck a distance of fifteen to twenty feet, shifted the gears into drive, and accelerated toward the victim. The victim jumped on the hood of the defendant's vehicle, with his face pressed up against the windshield. The defendant swerved, and the victim fell off the hood of the truck, striking his head on the pavement.

At first, Sanford thought that the victim was joking, or "playing possum," in an "attempt to trick [the defendant] into stopping," or to get the defendant into trouble with his parole officer. When Sanford realized that the victim was not getting up off the ground, she asked the defendant to stop the vehicle. The defendant refused to pull over because he did not have a driver's license, and the vehicle that he was operating was not registered or insured. The defendant and Sanford then drove away from the scene of the collision.

The defendant had access to a commercial garage located in Bozrah and drove the truck there following the incident. Sanford attempted to contact the victim by calling his cell phone, but a police officer answered, and she hung up after providing the officer with a false name. The defendant told Sanford to take the batteries out of the cell phone that she had used to call the victim so that the police could not locate it. Sanford then called Michele Savalle, a friend of the defendant. Savalle picked up the defendant and Sanford from the garage in Bozrah and brought them to her home in Colchester. After going out to dinner, the defendant and Sanford spent the night at Savalle's home.

The next day, on July 15, 2009, the defendant met with his parole officer. The Norwich Police Department

had developed the defendant as a suspect in the incident, and, accordingly, his parole officer transported him to the police station for questioning. Officer Thomas Lazzaro of the Norwich Police Department interviewed the defendant, but did not place him under arrest. On July 20, 2009, the victim died at the hospital as a result of the head trauma he suffered as a result of the collision. Thereafter, the defendant was arrested and was charged by information with murder in violation of General Statutes § 53a-54a and evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (a).[1]

A jury trial was held in September and October, 2012. On October 1, 2012, following closing arguments, the court, *A. Hadden, J.*, charged the jury. With respect to the evading responsibility charge, the court read the pertinent part of § 14-224 (a)[2] to the jury and then explained the four elements of the crime that the state had to prove beyond a reasonable doubt: (1) "the defendant operated a motor vehicle"; (2) "the defendant was knowingly involved in an accident"; (3) "the accident caused serious physical injury or death to a person"; and (4) "the defendant did not stop at once and render assistance as needed and did not [give] his name, address, operator's license number, and registration number to either the person injured . . . the witness to the accident or an officer. If, for any reason or cause, the defendant was unable to provide the required information at the scene of the accident, the law requires him to immediately report the accident to a law enforcement officer or to the nearest police station." The defendant did not take an exception to the court's charge on the ground that it did not explain that the defendant's reasonable fear for his safety would provide an excuse that would justify his failure to stop. Subsequently, the defendant submitted a written request to charge on the defense of justification. In his written request to charge the jury, the defendant did not request an instruction that a defendant's reasonable fear of harm from the victim would be a possible defense to the charge of failing to stop and render assistance under § 14-224 (a).

The jury found the defendant guilty of evasion of responsibility in the operation of a motor vehicle and the lesser included offense of manslaughter in the second degree.[3] The court imposed a total effective sentence of twenty years incarceration, execution suspended after fifteen years, followed by five years of probation.

In an attempt to obtain extraordinary review of this unpreserved claim, the defendant urges us to invoke the plain error doctrine. See Practice Book § 60-5.[4] "The plain error doctrine is a rule of reversibility reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial

proceedings. . . . That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 618, 999 A.2d 752 (2010).

As noted, the defendant's sole claim on appeal is that the court committed plain error by failing to instruct the jury sua sponte that a defendant's reasonable fear of harm from the victim would be a possible defense to the charge of failing to stop and render assistance under § 14-224 (a). The defendant argues that *State* v. *Kitchens*, 299 Conn. 447, 474 n.18, 10 A.3d 942 (2011), is inapplicable where, as here, an improper jury charge constitutes plain error. The defendant further argues that defense counsel's participation in the charge conference and his subsequent failure to put any additional information on the record "falls short of expressing unequivocal approval of the evading responsibility instruction." In addition, the defendant argues that "[in] light of [his] motion for judgment of acquittal, his closing argument and the testimony from . . . Sanford which [he] developed through cross-examination, the record is not [sufficient] to overcome the usual presumption against the waiver of important rights." We disagree.

The claim raised by the defendant is premised upon the court's failure to instruct the jury on a possible defense to the charge of evasion of responsibility in the operation of a motor vehicle, as articulated previously by this court in *State* v. *Rosario*, 81 Conn. App. 621, 628–29 n.4, 841 A.2d 254, cert. denied, 268 Conn. 923, 848 A.2d 473 (2004).[5] The state counters that plain error review of the defendant's claim is thwarted because he waived his challenge to the jury instruction by inducing the error of which he now complains. See *State* v. *Kitchens*, supra, 299 Conn. 480 ("Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them"). Specifically, the state argues that such an instruction pursuant to *State* v. *Rosario*, supra, 81 Conn. App. 628–29 n.4, would have highlighted the defendant's failure to report the incident immediately to a law enforcement officer or to the nearest police precinct or station, as required by § 14-224 (a).[6] The state further argues that the court afforded the defendant a meaningful opportunity to review the instructions before the court delivered its charge, and counsel for the defendant affirmatively accepted the

instructions at trial by failing to take an exception at the time they were given. See *State* v. *Tozier*, 136 Conn. App. 731, 744–45, 46 A.3d 960, cert. denied, 307 Conn. 925, 55 A.3d 567 (2012). We agree with the state.

Whether a defendant waives the right to challenge jury instructions is a question of law over which we exercise plenary review. See *State* v. *Mungroo*, 299 Conn. 667, 672–73, 11 A.3d 132 (2011).

Relevant to the issue of waiver in the context of jury instruction claims, our Supreme Court stated that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*, supra, 299 Conn. 482–83. To determine whether, as is argued by the state, the defendant implicitly waived his claim of instructional error, we will turn to "a close examination of the record and the particular facts and circumstances of [this] case." Id., 483.

The record reflects that the presentation of evidence in this case occurred over the course of four days in September, 2012. On September 27, 2012, the third day of evidence, the state filed a written request to charge on the murder count and lesser included offenses. The next day, on September 28, 2012, the defense filed its request to charge on the murder count and lesser included offenses. Neither the state nor the defendant submitted a request to charge on the evading responsibility count. On September 28, 2012, the court provided counsel with copies of its proposed charge for review over the weekend.

On Monday, October 1, 2012, the court memorialized the charge conference held the previous week by stating the following on the record: "We did have a discussion regarding the jury charge. Counsel were provided with copies of a proposed charge last Friday. We did discuss making some alteration to the charge of evading responsibility which I agreed to make."[7] We can reasonably infer that the defendant was present at the off-the-record charge conference. Prior to charging the jury, the court asked the parties if there was "[a]nything else" to discuss on the record regarding the charge conference. Defense counsel indicated that he did not have anything to add to the record regarding the charge conference. Following closing arguments, the jury was given a short recess, and then the court delivered its charge to the jury. The state objected to a negligent

homicide instruction being given on the basis that it was not charged as being committed with a motor vehicle. The court overruled the objection of the state. Neither the prosecutor nor defense counsel took an exception to the court's charge on evasion of responsibility.

Our case law does not provide an exact definition of what constitutes a meaningful opportunity for review under *Kitchens*.[8] See *State* v. *Kitchens*, supra, 299 Conn. 495 n.28 ("The significance of a meaningful opportunity for review and comment cannot be underestimated. Holding an on-the-record charge conference, and even providing counsel with an advance copy of the instructions, will not necessarily be sufficient in all cases to constitute waiver of *Golding* review[9] if defense counsel has not been afforded adequate time, under the circumstances, to examine the instructions and to identify any potential flaws."). Prior decisions of this court have held that an opportunity to review a proposed charge overnight amounts to an opportunity for meaningful review. See, e.g., *State* v. *Lee*, 138 Conn. App. 420. 453–54, 52 A.3d 736 (2012); *State* v. *Fontaine*, 134 Conn. App. 224, 231, 40 A.3d 331, cert. denied, 304 Conn. 926, 41 A.3d 1052 (2012).

Here, we are persuaded that the defense had a meaningful opportunity to review the court's proposed charge. There is no dispute that defense counsel was in possession of the court's proposed charge on Friday, September 28, 2012, three days before the charge was given. On the morning of Monday, October 1, 2012, prior to delivering closing arguments, the court asked defense counsel whether he had "[a]nything else" to state on the record with regard to the off-the-record charge conference regarding the proposed instructions. Defense counsel responded: "I don't think so, Your Honor."

"The mechanism by which a right may be waived . . . varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . This court has stated that among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467. On the basis of our close examination of the facts of this case, we have determined that the representations of defense counsel, and his failure to request additional time to examine the instructions as proposed, reflected acquiescence in those instructions. See *State* v. *Tozier*, supra, 136 Conn. App. 745. We therefore conclude that the defendant implicitly waived his claim that the court improperly omitted an instruction that a defendant's reasonable fear of harm from the victim would be a

defense to the charge of failing to stop and render assistance under § 14-224 (a).

Because we have concluded that the defendant waived his right to raise the present claim of instructional error at trial, we reject his argument that the court committed plain error.[10] As our Supreme Court observed in *Kitchens*, "a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct." *State* v. *Kitchens*, supra, 299 Conn. 474 n.18; see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009) (reasoning that valid waiver thwarts "review" under plain error doctrine). This court has adhered to the view that waiver thwarts a finding that plain error exists. See, e.g., *State* v. *Fuller*, 158 Conn. App. 378, 390,     A.3d     (2015); *State* v. *McClain*, 154 Conn. App. 281, 293, 105 A.3d 924 (2014); *State* v. *Reddick*, 153 Conn. App. 69, 82, 100 A.3d 439, appeal dismissed, 314 Conn. 934, 102 A.3d 85, cert. denied, 315 Conn. 904, 104 A.3d 757 (2014); *State* v. *Cancel*, 149 Conn. App. 86, 102–103, 87 A.3d 618, cert. denied, 311 Conn. 954, 97 A.3d 985 (2014); *State* v. *Tozier*, supra, 136 Conn. App. 744. Accordingly, we conclude that the defendant's waiver precludes the application of the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On September 28, 2012, the state filed a substitute information charging the defendant with the same offenses.

[2] General Statutes (Rev. to 2009) § 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

[3] Additionally, we note that the jury returned a verdict of not guilty with regard to one count of murder in violation of General Statutes § 53a-54a and as to the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).

[4] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[5] In *Rosario*, the defendant was the driver of a vehicle that struck and killed a pedestrian. *State* v. *Rosario*, supra, 81 Conn. App. 622. The defendant did not stop immediately after striking the pedestrian but, instead, drove directly to his home. Id., 624. After speaking with his wife, the defendant turned himself in at the police station approximately twenty minutes after the first report of the accident. Id. After a jury trial, the defendant in *Rosario* was convicted of evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (a). Id., 623. The court in *Rosario* noted that the

evidence amply supported the conclusion that the defendant was scared and that was one of the reasons why he had failed to stop at the scene of the accident. Id., 628. The court concluded that the defendant's emotional state in *Rosario* did not excuse his actions, but the court noted that "a situation might arise in which the operator's emotional state and subsequent flight from the scene are grounded in facts that could excuse his failure to stop." Id., 628 n.4. The court continued: "[A defendant's] honest belief that he was in danger of bodily harm if he remained at the scene of the accident might justify his conduct in leaving without giving identification; but the alleged fear of [the defendant] that he might have been assaulted if he had stopped to comply with the statute does not excuse his failure to comply, where there was not any attempt or threat to assault him or the display of any weapon with which an assault might have been committed. 61A C.J.S. 553, Motor Vehicles, § 676 (1970)." Id., 629 n.4. The court in *Rosario* concluded that the defendant's failure to stop was not justified, because there was no evidence of any threats or a display of weapons at the scene of the accident. Id.

[6] General Statutes (Rev. to 2009) § 14-224 (a) allows an operator to report an accident at the nearest police station if he is unable to give the statutorily required information "to the person injured or to any witness or officer, *for any reason or cause* . . . ." (Emphasis added.) Our review of the record indicates that the defendant did not call the police, nor did he discuss with Sanford the possibility of going to the nearest police station for his own safety. We therefore agree with the state that even if the jury was persuaded that the defendant's emotional state justified his failure to remain at the scene of the collision, that does not excuse his failure to comply with the statute's mandate to "immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station . . . ." General Statutes (Rev. to 2009) § 14-224 (a).

[7] It is not apparent from our review of the record what "alteration" the court agreed to make with respect to the evading responsibility charge. Because the record does not contain a copy of the proposed jury instructions as provided to the parties on September 28, 2012, we are able to consider only the final amended version of the instructions as given to the jury.

[8] At oral argument, the defendant urged this court to adopt the federal plain error standard as articulated by the United States Court of Appeals for the Ninth Circuit. See *United States* v. *Bear*, 439 F.3d 565, 568 (9th Cir. 2006) ("[w]hen a defendant actually presents and relies upon a theory of defense at trial, the judge must instruct the jury on that theory even where such an instruction was not requested"). We find no occasion to turn to the federal law regarding plain error in light of our own precedents.

[9] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[10] In its appellate brief, the state maintains that the claim raised by the defendant on appeal is not reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) Id.; see *In re Yasiel R.*, 317 Conn. 773, 781, A.3d (2015) (modifying third prong).

We agree with the state that the defendant cannot prevail under *Golding* because he cannot demonstrate that the alleged constitutional violation exists and deprived him of a fair trial. "[I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).