STATE OF CONNECTICUT *v.* SHARIEF T. NASHEED
(AC 29661)

Flynn, C. J., and Lavine and Foti, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 3, 2009—officially released June 15, 2010

*Alice Osedach*, assistant public defender, the appellant (defendant).

*David J. Smith*, assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Sharief T. Nasheed,[1] appeals from the judgment of conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree in violation of General Statutes § 53a-123 (a) (2), assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and of being a persistent dangerous felony offender in violation of General Statutes (Rev. to 2007) § 53a-40 (a)

---

[1] The defendant's birth name was Nestor Torruella, Jr. The substitute information charged him as "Sharief Nasheed [AKA. Nestor Toruella] . . . ." He legally changed his name to Sharief Talib Nasheed in 1999.

(1).[2] On appeal, the defendant claims that (1) the trial court improperly admitted testimonial evidence in violation of his state and federal constitutional rights, (2) there was insufficient evidence to support his conviction of being a persistent dangerous felony offender, (3) General Statutes (Rev. to 2007) § 53a-40 (h) is unconstitutionally vague and (4) the prosecutor committed reversible impropriety during the state's closing argument to the jury. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On November 13, 2007, the state, by way of a substitute information, charged the defendant with robbery in the first degree in violation of § 53a-134 (a) (4), larceny in the second degree in violation of § 53a-123 (a) (2) and assault in the third degree in violation of § 53a-61 (a) (1). The charges stemmed from the defendant's alleged assault and robbery of the victim, Vinod Patel, as he left the grocery and convenience store he owned in Voluntown. The state subsequently filed a part B information, on December 10, 2007, which charged the defendant with being a persistent dangerous felony offender pursuant to § 53a-40 (a) (1).

Following the jury's finding that he was guilty of the underlying robbery, larceny and assault charges, the defendant waived his right to a jury trial on the part B information and instead was tried before the court. The court found the defendant guilty of being a persistent

[2] General Statutes (Rev. to 2007) § 53a-40 provides in relevant part: "(a) A persistent dangerous felony offender is a person who: (1) (A) Stands convicted of manslaughter, arson, kidnapping, robbery in the first or second degree, or assault in the first degree, and (B) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death . . . for any of the following crimes: (i) The crimes enumerated in subparagraph (A) of this subdivision or an attempt to commit any of said crimes . . . ."

dangerous felony offender. The court thereafter sentenced the defendant to a total effective term of forty years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim on appeal is that the court improperly admitted testimonial evidence in violation of the defendant's state and federal constitutional rights to confrontation.[3] Specifically, he argues that testimony of Cochetta Thomas, his former probation officer, offered at the part B trial was testimonial hearsay that was inadmissible under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Because we conclude that the admission of this evidence was harmless beyond a reasonable doubt, we do not reach the question of whether the evidence was testimonial hearsay that was inadmissible under *Crawford*.

The following additional facts are necessary for the resolution of the defendant's claim. At the part B trial, the state presented the testimony of Thomas. Thomas supervised the defendant's probation that stemmed from his 1996 robbery convictions. The defendant was determined to be in need of "level one" probation supervision, which Thomas testified is a high level of supervision, as a result of some of his criminal behavior. Specifically, the defendant used a gun in his prior robberies, threatened one of the victims and pointed the gun at another victim, who heard the gun make a clicking noise as if it were going to be fired. While incarcerated, the defendant accumulated thirty-three

---

[3] To the extent that the defendant also asserts a claim that his due process rights were violated under the Connecticut constitution, he has failed to provide an independent analysis of this issue under the state constitution. See *State* v. *Banks*, 117 Conn. App. 102, 106 n.1, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009); see also *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (providing analytical tools for state constitutional claims). Consequently, we deem the defendant to have abandoned any state constitutional claim.

disciplinary tickets for offenses including assault on an officer, fighting and affiliating with a security risk group. The defendant had tested positive for drugs four times between August, 2003, and October, 2004, and was later discharged from an alternative incarceration center after he tested positive in two additional drug screenings and refused to attend group meetings. The defendant cross-examined Thomas about the source of her information. Thomas stated that she obtained much of her information from a presentence investigation report, police reports and department of correction records.

The defendant also testified at his part B trial.[4] He admitted that he had six prior convictions, including three robbery convictions, and that a gun had been used in each of the robberies. The defendant confirmed that certain photographs, which were entered into evidence as exhibits, pictured him pointing a gun at a person during the commission of one of the robberies. The defendant also acknowledged that he had been in a gang. Furthermore, he admitted that he had received at least thirty disciplinary tickets while he was incarcerated. During his most recent period of incarceration, in 2007, the defendant received a class A disciplinary ticket, the highest level, for throwing books from his cell toward the officers' station. He also conceded that he had used and been arrested for possessing marijuana, in addition to using cocaine. The defendant further testified that while on probation, he had tested positive for marijuana and cocaine, and that opiates also were found in his urine. He also confirmed that he had been discharged from the drug counseling he

---

[4] Several other witnesses testified at the part B trial, including a detective with the Stonington police department, a prior employer of the defendant, a state correctional counselor, the defendant's fiancee, the mother of one of the defendant's childhood friends, a pastor at the church the defendant attended as a child, the mother of one of the defendant's children and the defendant's mother.

received on probation because he failed to follow protocol.

The defendant contends that because Thomas' testimony was based on police reports, a presentence investigation report from his prior convictions, as well as department of correction records, the testimony was testimonial hearsay, which violated his constitutional rights to confrontation. The defendant did not object to the admission of such testimony at trial, however, and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). The record in this case is adequate for review, and the alleged violation is of a constitutional magnitude. We now consider whether the defendant may prevail on the merits of his claim.

Even if we were to assume, without deciding, that Thomas' testimony, which was based on police reports, a presentence investigation report and department of correction records, rather than firsthand knowledge,

violated the defendant's constitutional right to confrontation, we conclude that any error was harmless beyond a reasonable doubt.[5] "It is well established that a violation of the defendant's right to confront witnesses is subject to harmless error analysis . . . and only if the error was not harmless may the defendant prevail on his *Golding* claim. . . . The state bears the burden of proving that the error is harmless beyond a reasonable doubt. . . . Whether such error is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 289 Conn. 598, 628, 960 A.2d 993 (2008).

Although Thomas was an important witness for the prosecution, nearly every detail to which she testified

[5] To the extent that a part B trial embodies aspects of a "sentencing proceeding," we note the existence of case law concluding that the principles underlying *Crawford* are not applicable. See *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959) ("once the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court"); *United States* v. *Martinez*, 413 F.3d 239, 242 (2d Cir. 2005) ("[b]oth the [United States] Supreme Court and [the United States Court of Appeals for the Second Circuit], however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings"), cert. denied, 546 U.S. 1117, 126 S. Ct. 1086, 163 L. Ed. 2d 902 (2006); *State* v. *Eric M.*, 79 Conn. App. 91, 111, 829 A.2d 439 (2003) ("As a general proposition, the court at sentencing is permitted to consider information not circumscribed by the rules of evidence. Specifically, the court is permitted to consider hearsay."), aff'd, 271 Conn. 641, 858 A.2d 767 (2004).

was corroborated by the defendant. He admitted to his past robbery convictions, use of a gun during those crimes, receipt of over thirty disciplinary tickets, use of and positive tests for marijuana and cocaine while on probation and his discharge from drug counseling. Furthermore, the defendant cross-examined Thomas, and the court was fully aware that much of her testimony was not based on firsthand knowledge.

Most importantly, in rendering its decision, the court stated that it found the defendant's testimony to be most relevant to its determination of whether he was a persistent dangerous felony offender. The court proceeded to review the defendant's testimony before concluding: "[T]here is more than enough evidence, even through [the defendant's] own mouth, meaning testimony, that he had these three prior robbery convictions . . . and it is the court's determination to make, which is the second essential element: has the state proven beyond a reasonable doubt that [the defendant's] criminal conduct—I'm sorry, that [the defendant's] personal history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration is necessary in this case in lieu of the sentence for robbery in the second degree that is provided for in General Statutes § 53a-35? It is the opinion of the court based upon all of the testimony heard here, the exhibits, [and] reasonable inferences [drawn] therefrom that [the defendant's] criminal conduct indicates that extended incarceration will best serve the public interest, and that is based upon what I find that the state has proven beyond a reasonable doubt as I have just outlined concerning [the defendant's] history and character and the nature and circumstances of his criminal conduct. And, therefore, the court finds [the defendant] guilty of the part B information of being a persistent dangerous felony offender."

It cannot be said that Thomas' testimony influenced the judgment of the court because the court clearly stated that the defendant's testimony alone was sufficient to find him guilty beyond a reasonable doubt of being a persistent dangerous felony offender under § 53a-40. Because the state has proven that any constitutional error was harmless beyond a reasonable doubt, the defendant cannot prevail under *Golding*.

## II

The defendant next claims that there was insufficient evidence to support his conviction of being a persistent dangerous felony offender. We disagree.

Prior to sentencing, the defendant made an oral motion for a judgment of acquittal as to his conviction of being a persistent dangerous felony offender. The defendant contended that there was insufficient evidence to prove that it would best serve the public interest for him to be incarcerated for an extended period of time. The court denied the defendant's motion. He now renews this claim on appeal.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [finder of fact] if there is sufficient evidence to support [its] verdict. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"[F]or the purposes of sufficiency review . . . we review the sufficiency of the evidence as the case was tried; in other words, we review the evidence in its improperly restricted state, impropriety notwithstanding. Claims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error. . . . [A] claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Coccomo*, 115 Conn. App. 384, 395, 972 A.2d 757, cert. granted on other grounds, 293 Conn. 909, 978 A.2d 1111 (2009).

Before a defendant can be sentenced under § 53a-40 (h),[6] the defendant must first satisfy § 53a-40 (a) (1), which provides that a persistent dangerous felony offender is someone who has been "convicted of manslaughter, arson, kidnapping, robbery in the first or second degree, or assault in the first degree, and . . . has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term

---

[6] General Statutes (Rev. to 2007) § 53a-40 (h) provides in relevant part: "When any person has been found to be a persistent dangerous felony offender, and . . . such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, shall sentence such person to a term of imprisonment of not more than forty years and, if such person has, at separate times prior to the commission of the present crime, been twice convicted of and imprisoned for any of the crimes enumerated in subdivision (2) of subsection (a) of this section, sentence such person to a term of imprisonment of not more than life."

of imprisonment of more than one year or of death
. . . for any of the following crimes: [manslaughter,
arson, kidnapping, robbery in the first or second degree
or assault in the first degree] or an attempt to commit
any of said crimes . . . ." General Statutes (Rev. to
2007) § 53a-40 (a) (1). There is no dispute that prior to
the part B proceeding, the jury had found the defendant
guilty of robbery in the first degree. The court also
found that the defendant previously had been convicted
of robbery in the second degree and sentenced to ten
years imprisonment. These two findings satisfied the
first requirement of the statute, which is that the defen-
dant was a persistent dangerous felony offender. The
evidence was sufficient to find that the defendant was
a persistent dangerous felony offender in violation of
§ 53a-40 (a) (1).

There was also sufficient evidence to find that the
defendant's "history and character and the nature and
circumstances of [his] criminal conduct indicate that
extended incarceration and lifetime supervision will
best serve the public interest . . . ." General Statutes
(Rev. to 2007) § 53a-40 (h). The defendant's prior rob-
bery conviction stemmed from the simultaneous rob-
beries of two separate individuals. The court found that
the defendant possessed a gun during the commission
of those robberies and that there was evidence that he
threatened at least one of the victims with his weapon.
The court further found that the defendant had received
numerous disciplinary tickets while he was incarcer-
ated, for offenses including assaulting a correction offi-
cer, and that he had a long history of drug abuse, failed
drug tests and other noncompliance with the terms of
his probation. The evidence presented was sufficient
to conclude, beyond a reasonable doubt, that the public
interest would be best served by the defendant's
extended incarceration and lifetime supervision.

## III

The defendant's third claim on appeal is that § 53a-40 (h) is unconstitutionally vague, both as applied to him and on its face, and that his conviction under the statute violated his state and federal constitutional rights.[7] Specifically, the defendant argues that (1) § 53a-40 (h) failed to give him fair warning that the statute applied to him and (2) the statute permits arbitrary and discriminatory enforcement. We disagree.

The defendant failed to raise his claim at trial and seeks to prevail pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We will review his claim under *Golding* because the record is adequate, and a claim that a statute is unconstitutionally vague implicates the defendant's fundamental due process right to fair warning. See *State* v. *Coleman*, 83 Conn. App. 672, 676–77, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005). We conclude, however, that there

---

[7] The defendant cites *State* v. *Bell*, 283 Conn. 748, 931 A.2d 198 (2007), for the proposition that a defendant is entitled to a jury determination of whether the defendant's "history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest . . . ." General Statutes (Rev. to 2007) § 53a-40 (h). *Bell* held that the previous construction of § 53a-40 (h) was unconstitutional under *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny. When *Bell* was decided, § 53a-40 (h) provided in relevant part: "When any person has been found to be a persistent dangerous felony offender, and *the court is of the opinion that* such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest . . . ." (Emphasis added.) General Statutes (Rev. to 2007) § 53a-40 (h). *Bell* does not support the defendant's claim. As an initial matter, the Supreme Court excised that language, "the court is of the opinion that," from the statute. *State* v. *Bell*, supra, 812–13. Second, *Bell* also clearly enunciates that "in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding." Id., 812. As noted, the defendant here waived his right to a jury trial under § 53a-40.

was no constitutional violation because the statute is not vague as applied to the circumstances of the present case.

The defendant first argues that § 53a-40 (h) failed to give him fair warning that the statute applied to him. He contends that a reasonable person in his position would not have anticipated that the statute would apply to his conduct. Based on the facts of this case, we disagree.

We begin by setting forth the relevant legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute. . . .

"[T]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Citations omitted; internal quotation marks

omitted.) *State* v. *Thomas W.*, 115 Conn. App. 467, 472–73, 974 A.2d 19, cert. granted on other grounds, 294 Conn. 911, 983 A.2d 276 (2009).

As discussed previously; see part II of this opinion; the defendant was a persistent dangerous felony offender in violation of § 53a-40 (a) (1). There can be no dispute that a person of ordinary intelligence would understand that someone in the defendant's position would thus be subject to § 53a-40 (h).

The central question, then, is whether a person of ordinary intelligence would conclude that the defendant's "history and character and the nature and circumstances of [his] criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest . . . ." General Statutes (Rev. to 2007) § 53a-40 (h). The defendant's prior robbery conviction stemmed from the simultaneous robberies of two separate individuals. The defendant acknowledged that he possessed a gun during the commission of those robberies. There was evidence that pictured the defendant pointing a weapon at one of the victims. Both Thomas and the defendant testified that he had received numerous disciplinary tickets while he was incarcerated for offenses including assaulting a correction officer. Thomas also testified as to the defendant's long history of drug abuse, failed drug tests and other noncompliance with the terms of his probation. The crime underlying that testimony was a violent assault and robbery. Although the defendant presented evidence of his employment history, gang renunciation and responsibility in raising his daughter, a person of ordinary intelligence would have little difficulty in concluding that the public interest would be best served by his extended incarceration and lifetime supervision.

In his second argument, the defendant challenges § 53a-40 (h) on its face, arguing that it permits arbitrary

and discriminatory enforcement because "the plain language of the statute does not provide the trier of fact with any standards or guidance as to what history or type of character or as to what nature and circumstances of criminal conduct would give rise to an extended period of incarceration that would best serve the public interest." "[I]n order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of [the] case." (Internal quotation marks omitted.) *State* v. *Bloom*, 86 Conn. App. 463, 468, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005). The defendant's convictions bring him within the statute's core of prohibited conduct, and the application of the statute to the defendant is constitutional. He may not prevail on a vagueness challenge to the facial validity of the statute. Based on the merits of the case, the constitutional violation does not clearly exist, and, thus, the defendant cannot succeed under *Golding*.

## IV

The defendant's final claim is that the prosecutor committed impropriety during rebuttal closing argument to the jury that is a ground for reversal. We disagree. But even if we assume that the claimed impropriety occurred, it did not deprive the defendant of his right to a fair trial.

The following facts, which the jury reasonably could have found, are relevant to the resolution of the defendant's claim. On April 16, 2004, the victim was leaving the store he owned and operated in Voluntown. The victim had approximately $6000 in cash and $7000 worth of checks from his check cashing business on his person when he left the store. After he got into his car, someone came from behind the car and prevented him from closing his car door. The robber was wearing

a black hat, which covered his entire face except for his eyes. The robber pointed a gun at the victim, demanded that the victim give him money and, when the victim said he did not have any money, hit the victim in his nose with the gun. The victim testified that the gun was silver but could not identify what type of gun it was. The robber found the bags with the money, took them and ran toward the church that was next to the convenience store. After dialing 911, the victim drove toward the church and saw a white car occupied by two people, no license plate and tinted windows leave the church. The victim pursued the car while still on the telephone with a state police trooper, but stopped following it at the trooper's instruction.

Mark Stalder testified that he met the defendant when the defendant began dating Stalder's cousin. In April, 2004, the defendant asked Stalder to take a ride with him in his white Plymouth with tinted windows. The defendant drove to the convenience store in Voluntown and told Stalder that he was going to rob it. The defendant told Stalder to park the car on the side of the church and wait for him. Approximately one hour later, the defendant returned to the car and told Stalder to drive away. As they were driving away, the defendant told Stalder that he had robbed the store.

Although he did not see the defendant with a silver revolver on the night of the robbery, Stalder testified that he had seen the defendant in possession of a silver revolver several times. At a later date, the defendant and Stalder's cousin told Stalder that they needed to get rid of the gun. Stalder took the gun and threw it into Lake Brandegee, which borders New London and Waterford.

In June, 2004, the police obtained information about a weapon that was thrown into Lake Brandegee. Divers retrieved a silver revolver from the lake. After speaking

with a witness who observed the gun being thrown into the lake, detectives determined that Stalder had discarded the gun. After talking to the detectives about the gun, Stalder provided the detectives with information regarding the robbery of the convenience store in Voluntown. On the basis of the information Stalder provided the detectives, they arrested Stalder and the defendant in connection with the Voluntown robbery.

During rebuttal closing argument, the prosecutor indicated that the victim had testified that "there was a revolver involved, and there was a black man involved"; "that he was struck by this person, a black male, who was carrying a silver revolver," and that the victim had indicated that the perpetrator "was a black man with a silver revolver . . . ." The prosecutor also said that "Stalder indicates that the defendant had [the silver revolver] at some point during the incident."

After the conclusion of closing arguments, the defendant objected to the state's recitation of those facts, contending that the evidence did not support the facts as they were characterized. In overruling the objection, the court stated: "As both of you indicated, as I indicated before each of you spoke, and as I will obviously tell the jury during my instructions of law, again, it is for the jury to determine what are the facts. Any comments of counsel, as I have already indicated, are not evidence.

"I've told them that already, and again, I think and know and expect, based upon my instructions and my statements to the jury, that they understand and will understand, and I have told them on numerous occasions they will solely decide what are the facts. I don't propose to give any corrective instructions."

The court then instructed the jury as it told counsel it would. The court stated: "You are the sole judges of the facts. It is your responsibility and duty to find the facts. You are to recollect and weigh the evidence and

*form your own conclusions as to what the ultimate facts are. . . .*

"I will remind you again that during the course of the summations by counsel, each side presented to you what they believed to be certain evidence in the case. There, at least from what I heard, was certainly a dispute as to what certain witnesses said or didn't say.

*"What the lawyers said is not evidence and, again, I remind you, it is solely for you and you alone to decide the facts as to what witnesses said or did not say for you to decide ultimately from the evidence properly presented what are the facts in this case."* (Emphasis added.)

"The governing legal principles on prosecutorial impropriety are well established. [A] claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). . . . [T]he touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in . . . *Williams.* . . . In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . .

"If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State* v. *Williams*, supra, 204 Conn. 540, whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial. . . . These factors include

the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case. . . . We address the alleged improprieties in turn." (Citations omitted; internal quotation marks omitted.) *State* v. *Jordan,* 117 Conn. App. 160, 162–64, 978 A.2d 150, cert. denied, 294 Conn. 904, 982 A.2d 648 (2009).

We are aware of case law that holds that "the prosecutor must confine the arguments to the evidence in the record." (Internal quotation marks omitted.) *State* v. *Whipper,* 258 Conn. 229, 263, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz,* 269 Conn. 97, 106, 848 A.2d 445 (2004); see *State* v. *Santiago,* 103 Conn. App. 406, 424, 931 A.2d 298 (prosecutor may not comment unfairly on evidence in record), cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). Assuming, but without concluding, that an impropriety in fact occurred, we will examine the effect that such an impropriety might have had on the defendant's due process right to a fair trial. The first *Williams* factor considers the extent to which the impropriety was invited by defense conduct. In this case, although the claimed impropriety occurred during the state's rebuttal closing argument, the improper comments were not invited by defense conduct.

With regard to the second, third and fourth *Williams* factors, the defendant concedes that the claimed improprieties were not frequent but argues that they were severe because they go to the heart of the trial—the identity of the perpetrator—and occurred during a critical part of the trial. The state contends that the comments were not severe because the central issue of the case was not the identity of the robber but, rather, the credibility of the witnesses. Although we accept the defendant's characterization of the critical issue to be

decided, we believe it is important to note that the credibility of Stalder, who put the defendant at the scene of the crime with the silver revolver, was nearly as critical. Therefore, this factor does not weigh heavily in favor of the defendant.

The fifth *Williams* factor contemplates the effectiveness of the curative measures adopted by the court. Here, after the court denied the defendant's objection to the state's comments, it did not issue any curative instructions. The court's instructions clearly reminded the jury that it is the sole finder of fact and that arguments made during summation are not facts. Understanding the significant concerns that arise when arguments improperly reference facts purportedly in the record, we conclude that this measure was sufficient to cure any alleged impropriety.

The final *Williams* factor, the strength of the state's case, also favors the state. As discussed previously, although Stalder testified that he had not seen the defendant with the gun on the night of the robbery, he said that he accompanied the defendant to the convenience store in the defendant's white car with tinted windows, assisted in the defendant's getaway and later threw the defendant's silver revolver into Lake Brandegee. This testimony echoes the victim's testimony that the robber had a silver gun and left the incident in a white car with tinted windows, which was occupied by two people. Even without the allegedly improper statements, the state's case was strong enough that a jury could have found the defendant guilty beyond a reasonable doubt. We conclude that any impropriety that may have occurred did not "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 539.

The judgment is affirmed.

In this opinion the other judges concurred.