******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* KENNETH G.*
## (AC 48991)

Alvord, Suarez and Seeley, Js.

### *Syllabus*

Convicted, after a jury trial, of various crimes, including possession of child pornography in the first degree, the defendant appealed to this court. During the trial, the state presented, inter alia, evidence of sixty-six thumbnail images of child pornography that had been found on the defendant's iPad. On appeal, the defendant claimed that there was insufficient evidence to support his conviction of possession of child pornography. *Held*:

The defendant's claim that he could not knowingly possess thumbnail images that were automatically created and stored in a directory inaccessible to him was unavailing, as the state consistently advanced the theory at trial that the possession of child pornography charge was based on the defendant's constructive possession of the original images, of which the thumbnail images served as evidence, and not the thumbnail images themselves.

The evidence reasonably supported the jury's determination that the state proved beyond a reasonable doubt that the defendant knowingly possessed the original images of child pornography, as, viewing the evidence in the light most favorable to sustaining the verdict, there was sufficient evidence to establish that the defendant transferred, viewed, and later deleted the original images of child pornography, and the jury could have inferred that the images were not downloaded inadvertently or by mistake and that the defendant was aware of their existence on the basis of evidence that the defendant was familiar with nude and sexually suggestive photos of children and how to search for and store such material on his electronic devices.

Argued October 8, 2025—officially released January 6, 2026

### *Procedural History*

Substitute information charging the defendant with four counts of the crime of sexual assault in the first

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

degree, five counts of the crime of risk of injury to a child, two counts of the crime of sexual assault in the third degree, and one count each of the crimes of conspiracy to commit sexual assault in the third degree, attempt to commit sexual assault in the first degree, and possession of child pornography in the first degree, brought to the Superior Court in the judicial district of Danbury, geographical area number three, and tried to the jury before *Pavia, J.*; verdict and judgment of guilty of three counts of sexual assault in the first degree, five counts of risk of injury to a child, two counts of sexual assault in the third degree, and one count each of conspiracy to commit sexual assault in the third degree, attempt to commit sexual assault in the first degree, and possession of child pornography in the first degree, from which the defendant appealed to the Supreme Court, which transferred the appeal to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief, were *David Applegate*, state's attorney, and *Kristin Chiriatti* and *Mary-Caitlin Harding*, assistant state's attorneys, for the state (appellee).

*Opinion*

ALVORD, J. The defendant, Kenneth G., appeals from the judgment of conviction, rendered after a jury trial, of possession of child pornography in the first degree in violation of General Statutes (Rev. to 2019) § 53a-196d (a) (1).[1] On appeal, the defendant claims that there

---

[1] Hereinafter, unless otherwise indicated, all references to § 53a-196d in this opinion are to the 2019 revision of the statute. That statute was amended by No. 24-118, § 4, of the 2024 Public Acts, effective October 1, 2024, which made technical changes to the statute by changing the term "child pornography" to "child sexual abuse material." *State* v. *Inzitari*, 351 Conn. 86, 88 n.1, 329 A.3d 215, cert. denied,      U.S.     , 145 S. Ct. 2787, 222 L. Ed. 2d 1080 (2025).

The jury found the defendant guilty of thirteen counts, including three

was insufficient evidence to support his conviction of possession of child pornography.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is the father of E and G, who are half-siblings. E lived with the defendant and the defendant's wife, Lisa G. (Lisa), who is E's mother, until E moved away at the age of eighteen. G lived out of state but visited the defendant occasionally until G was between the ages of twelve and fourteen. The events underlying the defendant's convictions as they relate to E occurred between 2003 and 2015, when E was between the ages of seven and eighteen. The events underlying the defendant's conviction as they relate to G occurred sometime between 2004 and 2005.

The defendant raised E in what E described as a "nudist household" and encouraged both E and G to

counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B) and (a) (2), one count of conspiracy to commit sexual assault in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-72a (a) (1) (B), one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), and one count of possession of child pornography in the first degree in violation of § 53a-196d (a) (1). On appeal, the defendant challenges only his conviction of possession of child pornography in the first degree.

[2] Although the defendant has separately briefed his arguments in support of his claim, we will address them together. Additionally, the defendant raises the alternative claim that, "[i]f this court concludes that 'knowing possession' of child pornography includes (1) thumbnails automatically created by a computer program and normally inaccessible to the user, or (2) viewing images of child pornography with no evidence that the user intentionally stored or manipulated the images, then the statute is unconstitutionally vague when applied to [him] under the facts in this case." In light of our conclusions that the defendant was convicted of possessing the original images of child pornography, and not the thumbnails, and that the defendant did not merely view the images on a website, we need not reach the defendant's alternative claim that the statute is void for vagueness as applied to his conduct.

be naked when in the defendant's home. E testified to being scared of the defendant because he was the "main . . . punisher" and "would be the one to spank [E]" but that the spankings stopped at a certain age when E "was more obedient." At some point between 2003 and 2005, when E was between the ages of seven and nine, the defendant anally penetrated E with his penis while they were alone in his bedroom.

During one of G's visits to the defendant's residence, G recalled being alone with the defendant while both were naked in the living room and that "it was brought up to kind of explore each other's bodies." They then engaged in sexual intercourse by which G performed oral sex on the defendant and the defendant performed oral sex on G.

Between 2006 and 2008, when E was between the ages of ten and twelve, the defendant created what he called an "escape game," in which the defendant would "tie [E] up in different ways and either use . . . a candle that [E] had to blow out, or the microwave [timer], with a countdown. And [E] had to . . . escape before the countdown . . . finished." In the final occurrence, the defendant tied E to a "support beam pole" in the garage with zip ties while E was naked. E remained tied to the pole after the timer expired, and, as punishment for failing to escape, the defendant used his belt to whip E while E was still tied to the pole. After hitting E a couple times with the belt, the defendant penetrated E anally with his penis.

Within this same time frame, the defendant also would threaten E with "rough anal" as punishment if E received a grade of C or below. In a separate occurrence, the defendant sought to engage in a role-playing exercise in which "he was much rougher" than he had been previously. At that time, the defendant penetrated

E anally with his penis while they were alone in his bedroom.

When E was eleven years of age, the defendant asked E to write a letter to Lisa telling her about the sexual acts that the defendant and E had been engaging in and inviting Lisa to join them. Shortly thereafter, during "family time," when the defendant, E, and Lisa ate dinner and watched television, the defendant initiated oral sex with Lisa. While Lisa performed oral sex on the defendant, he would snap to get E's attention and summon E to participate. Once E went over to the defendant and Lisa, the defendant had E "fondle his testicles while [Lisa] was performing oral [sex] . . . ." On some occasions, the defendant would bring E and Lisa to his bedroom, where the defendant and Lisa would engage in vaginal intercourse, while the defendant would have E watch or "fondle his testicles while they had sex." This occurred a few times a week until E moved from the residence at the age of eighteen.

In 2014, at the age of seventeen, E began attending college out of state, where E lived temporarily. When E returned to the defendant's home in Connecticut for winter break, the defendant tried to pull E in to "kiss [the defendant] and to . . . grope and fondle [E]" while they were in the defendant's bedroom. When E resisted the defendant's advances, the defendant slapped E across the face, causing E to fall onto the defendant's bed. E could not recollect what occurred after the fall.

In the fall of 2021, E made a complaint to the Danbury Police Department that the defendant sexually abused E for years. In December, 2021, Danbury police executed search warrants for the defendant's home and electronic devices within the home. They seized several electronic devices, including the defendant's iPad, on which the Connecticut Forensic Science Laboratory

(forensic laboratory) conducted a partial extraction[3] and identified sixty-six thumbnails of potential child pornography, as well as approximately 300 thumbnails of potential child erotica.[4] The forensic laboratory also identified a bookmark for a Reddit webpage titled "Incest Porn," as well as a search for "My Family Pies Devoted to Daddy," which is a pornographic website related to sexual families and incest sex.

On May 31, 2022, the defendant was arrested pursuant to a warrant. Prior to trial, the state filed a fifth amended long form information dated August 22, 2023, charging the defendant with four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B) and (a) (2), one count of conspiracy to commit sexual assault in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-72a (a) (1) (B), one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), and one count

[3] The state's computer crimes and digital evidence expert from the forensic laboratory, Mark Newth, testified that "[e]xtraction means we're extracting the data from the device and copying it to another drive so that we can analyze it. So, it's creating a . . . forensic image. For some reason when we do a computer, we call it imaging, when we do a . . . mobile device, we call it an extraction, but it's the same thing."

[4] Thumbnails, as the state's computer crimes and digital evidence expert from the forensic laboratory, Mark Newth, described, are "basically a copy of an original image that's . . . made at a smaller size." He also explained that they are "[n]ot regular images. . . . If . . . you own a mobile device or . . . computer . . . when you open a folder, that's full of images, you can choose in the view menu . . . [if] you wanna see large icons, small icons. Those icons that display the images are what we call thumbnails and thumbnail images are created by the operating system for the purpose of display like that . . . ." He further noted that the images found on the iPad "were thumbnail images, not the actual images of the potential child pornography."

of possessing child pornography in the first degree in violation of § 53a-196d (a) (1).

A jury trial commenced on August 29, 2023, and included testimony from Mark Newth, the state's computer crimes and digital evidence expert from the forensic laboratory, and James Oulundsen, the defense's digital forensic expert. Both experts agreed that the iPad's user could not access the thumbnails. Newth testified that a thumbnail is created when the image that the thumbnail represents is viewed or accessed on a device. Referring to his extraction report, Newth explained that each of the images represented by the sixty-six thumbnails was viewed on the iPad once and over the course of four different dates in September and October, 2020. He further noted that those images were not accessed through the Internet because the file path[5] for the thumbnails on the defendant's iPad did not show a web browser.[6] Instead, Newth testified that the file path showed a File Browser application, a software that would have been downloaded onto the iPad that allows a user to transfer files and folders among Apple devices.[7] Testimony from Sergeant David Antedomenico of the Danbury Police Department established that,

---

[5] In his testimony, Newth described a file path as a series of folders that need to be opened to get to a specific file.

[6] Newth explained that, on an iPad, the web browser comes preinstalled and it is called "the Apple Safari web browser." He further opined that if the images had been accessed through an Internet browser such as Safari, or if the user had installed another Internet browser such as Google Chrome or Mozilla Firefox, those browsers, rather than the File Browser application, would have been identified in the file path.

[7] Newth testified that "File Browser is an app that's used by Apple users to share files and folders among their Apple devices. . . . So, you can use File Browser if you have your iPad open and you have File Browser on it, you can use it to access files and folders that are on your other Apple devices. Your laptop, your cell phone, whatever it might be. So, these . . . thumbnails that were inside this folder [on the defendant's iPad] were accessed through this File Browser app and came from another Apple device that the user had access to."

inter alia, three Apple devices—an iPad, a MacBook Air laptop, and a MacBook Pro laptop—were seized as part of the police investigation. Each of these electronic devices displayed the defendant's first and last name as the username associated with the device. The defendant acknowledged that he installed the File Browser app onto his iPad. Newth also explained that the original images accessed by the iPad came from another device but that he could not determine which device.

On September 6, 2023, at the conclusion of the state's case-in-chief, defense counsel orally moved for a judgment of acquittal on, inter alia, the possession of child pornography charge. After hearing oral arguments from both defense counsel and the prosecutor, the court, *Pavia, J.*, denied the motion. Thereafter, the defendant testified. He testified that he did not know the thumbnails existed, that he did not have access to the thumbnails, that he did not access or view the images on his iPad, that he did not download the images, and that he did not know how the thumbnails got onto his iPad. In addition, Oulundsen offered testimony that conflicted with Newth in that he suggested that there was no way to determine if the images were viewed on the iPad. He further explained that the File Browser application creates different folders for different types of data available from a particular device and that he could not determine who created the images without the original device. Oulundsen, however, confirmed that the user would have to actively take steps to transfer the thumbnail data to a device for the thumbnails to appear.

The jury returned a verdict on September 11, 2023, finding the defendant guilty of thirteen of the fourteen counts and not guilty on count eleven, which alleged a violation of § 53a-70 (a) (2) pertaining to G. Shortly thereafter, the defendant filed a motion for a judgment of acquittal with respect to the possession of child pornography charge. On November 21, 2023, the court

heard argument on the motion. The court denied the motion, concluding that, "should the jury have deemed the evidence to be credible, which ultimately in this case [it] did, then there is sufficient evidence by which the jury could have found each and every element of the charged offense." The court sentenced the defendant to a total effective sentence of fifty-five years of incarceration, fifteen years of which was a mandatory minimum, execution suspended after forty years, followed by thirty-five years of probation. This appeal, challenging only the defendant's conviction of possession of child pornography in the first degree, followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant asserts three arguments to support his claim that the state failed to proffer sufficient evidence that the defendant knowingly possessed child pornography. He argues that (1) he could not knowingly possess thumbnails created automatically by a computer program and saved in a directory he was not aware of and could not access; (2) he could not knowingly possess images that are only viewed or accessed; and (3) the state failed to show that he viewed or accessed the images. The state asserts that it "presented sufficient evidence that the defendant exercised control or dominion over the original images of child pornography." (Emphasis omitted.) We agree with the state.

We begin with our standard of review and the relevant legal principles that guide our analysis of the defendant's sufficiency of the evidence challenge. It is well settled that a defendant who "asserts an insufficiency of the evidence claim bears an arduous burden." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 146 Conn. App. 99, 110, 75 A.3d 798, cert. denied, 310 Conn. 948, 80 A.3d 906 (2013). "[F]or the purposes of sufficiency review . . . we review the sufficiency of the

evidence as the case was tried . . . . [A] claim of insuf-
ficiency of the evidence must be tested by reviewing
no less than, and no more than, the evidence introduced
at trial." (Internal quotation marks omitted.) *State* v.
*Nasheed*, 121 Conn. App. 672, 682, 997 A.2d 623, cert.
denied, 298 Conn. 902, 3 A.3d 73 (2010). "In reviewing
a sufficiency of the evidence claim, we apply a two part
test. First, we construe the evidence in the light most
favorable to sustaining the verdict. Second, we deter-
mine whether upon the facts so construed and the infer-
ences reasonably drawn therefrom the [jury] reasonably
could have concluded that the cumulative force of the
evidence established guilt beyond a reasonable doubt
. . . . This court cannot substitute its own judgment
for that of the jury if there is sufficient evidence to
support the jury's verdict." (Internal quotation marks
omitted.) *State* v. *Allan*, 311 Conn. 1, 25, 83 A.3d 326
(2014).

"[T]he jury must find every element proven beyond
a reasonable doubt in order to find the defendant guilty
of the charged offense, [but] each of the basic and
inferred facts underlying those conclusions need not
be proved beyond a reasonable doubt. . . . If it is rea-
sonable and logical for the jury to conclude that a basic
fact or an inferred fact is true, the jury is permitted to
consider the fact proven and may consider it in combi-
nation with other proven facts in determining whether
the cumulative effect of all the evidence proves the
defendant guilty of all the elements of the crime charged
beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force
of the evidence that it consists, in whole or in part, of
evidence that is circumstantial rather than direct. . . .
It is not one fact . . . but the cumulative impact of
a multitude of facts which establishes guilt in a case
involving substantial circumstantial evidence. . . . In
evaluating evidence, the [jury] is not required to accept

as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Papandrea*, 302 Conn. 340, 348–49, 26 A.3d 75 (2011).

Finally, on appeal, we do not "ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *VanDeusen*, 160 Conn. App. 815, 823, 126 A.3d 604, cert. denied, 320 Conn. 903, 127 A.3d 187 (2015).

General Statutes (Rev. to 2019) § 53a-196d (a) provides in relevant part: "A person is guilty of possessing child pornography in the first degree when such person knowingly possesses (1) fifty or more visual depictions of child pornography . . . ." "Possess, as defined in [General Statutes] § 53a-3 (2), means to have physical possession or otherwise to exercise dominion or control over tangible property. . . . Our jurisprudence elucidating this definition teaches that such possession may be actual or constructive. . . . Nevertheless, [b]oth actual and constructive possession require a person to exercise dominion and control over the [contraband] and to have knowledge of its presence and character. . . . Actual possession requires the defendant to have had direct physical contact with the [contraband]. . . . Typically, the state will proceed under a theory of constructive possession when the [contraband is] not found on the defendant's person at the time of arrest, but the accused still exercises dominion and control. . . . In this regard, [t]he essence of exercising control is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental intent. In our

criminal statutes involving possession, this control must be exercised intentionally and with knowledge[8] of the character of the controlled object." (Footnote added; internal quotation marks omitted.) *State* v. *Spence*, 165 Conn. App. 110, 123, 138 A.3d 1048, cert. denied, 321 Conn. 927, 138 A.3d 287 (2016).

We first address the defendant's argument that he could not knowingly possess thumbnails that "were automatically created and stored in a directory inaccessible to the user . . . ." The defendant asserts that this is an issue of first impression in Connecticut and asks this court to "follow [other] jurisdictions and conclude that a defendant does not knowingly possess thumbnails where there is no evidence that the defendant knew about the automatically generated thumbnails or had knowingly accessed them." The state counters that this argument should fail because the defendant was charged with possession of the original images. We agree with the state.

We find the defendant's argument to be without merit because it incorrectly is premised on his contention that he was prosecuted for and convicted of possessing thumbnails.[9] In its case-in-chief, the state advanced the theory that because a thumbnail is a copy of the original image and cannot be created without the original image,

---

[8] General Statutes § 53a-3 (12) provides: "A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists . . . ."

The court instructed the jury on the element of knowledge as follows: "The defendant must have knowingly possessed the object, that in this case is the child pornography. A person acts knowingly with respect to the possession of something when he is aware that he is in possession of it and is aware of the character of it. The state must prove beyond a reasonable doubt that the defendant knew that he was in possession of the object."

[9] Because we conclude that the child pornography charge is based on the defendant's possession of the original images, and not the thumbnails, we decline to address the out-of-state authority offered by the defendant in support of his argument that a defendant cannot knowingly possess thumbnails under § 53a-196d.

the thumbnails served as evidence that the defendant knowingly possessed the original images his iPad accessed in September and October, 2020. In his reply brief, the defendant asserts that the state changed its theory of liability on appeal, alleging that, "[b]ased on the state's arguments to the trial court . . . the [defendant] believed that the state was arguing that [the defendant] possessed the thumbnails" and that the state only "implied that the jury could convict [the defendant] of possessing the original images . . . ."[10] The record reflects, however, that through the prosecutor's direct and cross-examination of the forensic experts,[11] her

---

[10] We note, however, that the defendant, throughout his principal appellate brief, also appears to recognize that the state's focus was on the original images. The defendant represented as follows: "The state argued that the thumbnails were copies of images that were accessed on four dates in September and October, 2020. . . . Implicitly, it argued that accessing the original images was possession of child pornography" (citation omitted); "[i]n effect, the state argued [that the defendant] could be convicted if he viewed the original images, but never intentionally downloaded them, and that the thumbnails were evidence that he had intentionally viewed the original images"; and "[i]mplicit in the state's closing argument is the notion that [the defendant] knowingly accessed or viewed the images that were automatically stored as thumbnails and could be convicted on that basis, even if he did not know that the thumbnails existed."

[11] The following colloquies show that the state sought to elicit testimony from the forensic experts that supports the theory that the defendant knowingly possessed the images, and not the thumbnails. Newth was questioned as follows:

"[The Prosecutor]: And when is a thumbnail created?

"[Newth]: When an image is viewed or accessed.

\* \* \*

"[The Prosecutor]: Can you tell us whether there is any way to create a thumbnail image without having an actual image?

"[Newth]: No, there's not. The thumbnail image is a—basically a copy of an original image that's . . . made at a smaller size.

"[The Prosecutor]: And through your training and experience, were you able to determine if these images were accessed through . . . a website? Through viewing the web?

"[Newth]: It . . . does not appear that they were accessed through the web, no. They were accessed, very clearly, the data shows they came from this File Browser app . . . ."

Oulundsen was questioned as follows:

"[The Prosecutor]: But if an actual image isn't there, that can indicate that that was deleted, right?

opposition to the defendant's motions for judgment of acquittal, and her closing argument,[12] the prosecutor consistently advanced the theory that the possession of child pornography charge was based on the defendant's constructive possession of the original images, and not the thumbnails.

We next address the defendant's argument that there was insufficient evidence to establish that the defendant knowingly possessed child pornography because the state failed to present evidence that the defendant knowingly viewed or accessed the images. The state responds that it presented sufficient evidence from which a jury reasonably could have concluded that the defendant had constructive possession of the original images. Specifically, the state argues that the evidence shows that the defendant exercised control over the original images of child pornography, in that he not only viewed the images but also transferred them to his iPad and ultimately deleted them. We agree with the state.

Viewing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have

"[Oulundsen]: If . . . you take a photo with an iPhone, it creates both the image and the thumbnail for the gallery view. If you delete that image, often times the thumbnail would remain."

[12] In her argument opposing the oral motion for judgment of acquittal on September 6, 2023, the prosecutor recognized that "while these were thumbnail images, what that indicated is that the actual images had been deleted and . . . that any thumbnail image cannot be created without an actual image." In her closing argument on September 8, 2023, the prosecutor argued that thumbnails "don't just magically pop up, there has to be an original image because a thumbnail is a copy . . . . There were no original images on that device but there were thumbnails, there were traces left behind . . . ." The state's contention that the thumbnails are traces of the original images indicates that the thumbnails serve as evidence in support of its case and not the actual contraband on which it sought to prosecute the defendant. Finally, in the state's opposition to the defendant's motion for judgment of acquittal on November 21, 2023, the prosecutor further argued that "[the defendant] was charged with the possession of the original pornographic images that were downloaded throughout the months of September and October [2020]."

concluded that the defendant knowingly possessed the original sixty-six images of child pornography. The state presented evidence that the listed name and email address on the iPad containing the sixty-six thumbnails appeared as the defendant's first and last name followed by the word iPad and the defendant's first and last name as contained in an email address, respectively. The defendant testified that he owned the iPad and that he downloaded the File Browser application in 2011. The defendant also denied the "claim that someone else was using [his] iPad." Both Newth and Oulundsen testified that the file path for the thumbnails showed that they came from the File Browser application, which is used to transfer files and folders among Apple devices, and not from an Internet web browser such as Safari. Oulundsen further responded affirmatively to the prosecutor's question verifying "that the user has to actively take steps to transfer that data" for the thumbnails to be found on a device. Relatedly, the defendant replied "[p]robably" when asked, "[s]o, you understand then, that a user of your iPad had to access another device, and pull those images onto your iPad, right?" Newth testified that a thumbnail is created when the actual image is viewed or accessed and that the sixty-six original images were each viewed once over the course of four days in September and October, 2020. Although Oulundsen testified that he could not determine if any of the images ever appeared on the iPad, he acknowledged that, "[i]f you delete [an] image, often times, the thumbnail would remain."

Additionally, E testified that during E's early teenage years, the defendant took nude and sexually suggestive photos of E and saved the photos on his computer in an encrypted folder and told E that he liked looking at them. Newth also testified that he recovered approximately 300 thumbnails of potential child erotica from the defendant's iPad. Moreover, the record reflects that

the defendant made an inquiry to an adult bookstore asking for a book about "a daughter who hadn't seen a cock before and wanted to see daddy's cock" and searched the Internet for "My Family Pies Devoted to Daddy," a website Newth described as "specializ[ing] in sexual families, basically, incest sex . . . ."

From this evidence, the jury reasonably could have found that the defendant transferred, viewed, and later deleted the original sixty-six images of child pornography. The jury could have relied on the thumbnails found on the defendant's iPad as evidence that the defendant possessed the original images at an earlier time. See *United States* v. *Golden*, 44 F.4th 1129, 1132 (8th Cir. 2022) (where expert witness testified in part that "a thumbnail indicates that the original of that image was in the phone's gallery application at some point," existence of thumbnails on defendant's device supported conclusion that defendant knowingly received and possessed image); *United States* v. *Huyck*, 849 F.3d 432, 443 (8th Cir. 2017) ("though the ninety-five thumbnail images on the . . . hard drive were not viewable without special software, they nonetheless constituted evidence of prior possession of child pornography"). Moreover, the jury could have inferred that the defendant used the File Browser application to transfer the original images to his iPad from another device because he owned the iPad and downloaded the File Browser application, he does not claim that anyone else used his iPad, the File Browser application is used to share files between devices, and the file path of the thumbnails showed that the images came from the File Browser application. The jury also reasonably could have inferred that the defendant viewed and deleted those images because Newth testified that a thumbnail is created when an image is viewed or accessed on a device, the extraction report showed that the images were each accessed once over the course of four dates

in September and October, 2020, and Oulundsen testified that the thumbnail remains on the device after an image is deleted.

Moreover, the jury could have inferred that the images were not downloaded inadvertently or by mistake and that the defendant was aware of their existence on the basis of the evidence that the defendant was familiar with nude and sexually suggestive photos of children and how to search for and store such material on his devices. See *United States* v. *Huyck*, supra, 849 F.3d 443 ("evidence detailing [the defendant's] knowledge of, and interest in, child pornography, were probative as circumstantial evidence regarding [the defendant's] knowing possession of the [hard drive containing thumbnails of child pornography]" (internal quotation marks omitted)); *United States* v. *Woerner*, 709 F.3d 527, 537 (5th Cir.) (jury was not required to accept defendant's plausible explanation for how child pornography came to be on computer where state presented evidence of defendant's involvement with child pornography, including ninety videos and 1300 images found in defendant's email account, undercutting any potential argument that child pornography was downloaded by mistake), cert. denied, 571 U.S. 859, 134 S. Ct. 146, 187 L. Ed. 2d 103 (2013). The evidence, therefore, reasonably supports the jury's determination that the state proved beyond a reasonable doubt that the defendant knowingly possessed the original images of child pornography.

The defendant asserts that Newth's testimony that he "must have viewed the original images is not sufficient to support [the] jury's verdict . . . given Newth's unfamiliarity with the File Browser program." On cross-examination, Newth replied that he did not know if the File Browser application could access the Internet and that he did not know all of the application's capabilities. This exchange, however, primarily speaks to the issue

of whether the images were viewed on or downloaded from the Internet or a web browser, and not to the issue of whether the images were viewed on the iPad. As to the first issue, both Newth and Oulundsen testified that the file paths of the thumbnails show that the images came from the File Browser application and did not show any connection to an Internet browser. Therefore, the jury reasonably could have concluded that the defendant did not inadvertently download the images onto his iPad by simply browsing the Internet or viewing the images online. As to the second issue, although Newth may not have been familiar with the File Browser application, the jury could have credited his testimony that thumbnails are created on a device when images are viewed on that same device and that thumbnails were found on the iPad, and it reasonably could have inferred that the defendant viewed the images on his iPad. Although the testimony of Newth and Oulundsen conflicted as to whether it could be determined that the images were viewed on the iPad, "[w]hen experts' opinions conflict . . . [i]t is the province of the [trier of fact] to weigh the evidence and determine the credibility and the effect of testimony . . . . [T]he [fact finder] is free to accept or reject each expert's opinion in whole or in part." (Internal quotation marks omitted.) *State* v. *LeRoya M.*, 340 Conn. 590, 615, 264 A.3d 983 (2021).

In support of his argument that the evidence failed to establish that he knowingly possessed child pornography, the defendant seeks to distinguish the facts of the present case from those of *State* v. *Kirby*, 156 Conn. App. 607, 113 A.3d 138 (2015). The testimony in *Kirby* demonstrated that the defendant's computer contained twenty-four images of child pornography in its thumbcache.[13] Id., 615. The original images were contained

[13] In *Kirby*, the police officer who conducted the computer forensics investigation testified that a "[t]humbcache is a . . . small copy of the picture. What happens is, when things are brought into the computer there are thumbcache versions of them. They're smaller versions of them. . . .

on the victim's old cell phone, which she gave to the defendant, along with her new cell phone, after he offered to transfer the information from the old phone to the new phone. Id., 611. The thumbcache images depicted the photos contained on her old phone, but one blurred the victim's face and others had been rotated. Id., 615. The court concluded that, "[f]rom this testimony, the jury reasonably could have inferred that the defendant copied the photographs onto his computer when he transferred the information from the victim's old cell phone to the new one, and that he knew that they were on his computer because he rotated them and altered the victim's face in one photograph." Id. The defendant posits that, unlike *Kirby*, where there was evidence that the defendant altered the thumbnails, "[t]here is no evidence that [the defendant] manipulated the original images or the thumbnails." Moreover, the defendant contends that "there is no evidence about the source of the images that the thumbnails were created from; whether [the defendant] knowingly viewed those images; or whether he knew the thumbnails were on his iPad." We are not persuaded.

In both the present case and *Kirby*, the original photos were not found on the defendant's device, yet thumbnails or images in a thumbcache remained on the device. Additionally, in both instances, there was evidence that the defendant transferred the images onto his device. Furthermore, the jury in the present case reasonably could have found that the defendant viewed the images on his iPad on the basis of Newth's testimony. The ability to transfer images across devices and

There's different ways [pictures in the thumbcache] can be viewed. The way I viewed them was because of the forensic tool. There are ways you can go onto Google and you can download a thumbcache viewer." (Internal quotation marks omitted.) *State* v. *Kirby*, supra, 156 Conn. App. 611 n.4. Although the present case and *Kirby* use different terminology, we note that "thumbnails" and "thumbcache" as used in their respective contexts both describe images that are not original images and typically are not accessible to the user of that device.

view them on his iPad suggests that the defendant also could download, copy, and save the images, placing him in a position of control over the images. Although there was no evidence presented that the defendant manipulated the thumbnails, as was presented in *Kirby*, the defendant's knowledge of the original images could be inferred by the affirmative steps needed to transfer the thumbnails to the iPad and the defendant's experiences with similar material, both of which support the conclusion that the images were not downloaded by mistake. Accordingly, viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant knowingly possessed sixty-six images of child pornography.

The defendant further argues that § 53a-196d (a) (1) does not encompass "accessing or viewing images if there is no evidence that the defendant intentionally stored them, printed them out, or otherwise accessed them." The defendant asks this court to adopt the conclusion reached by courts in Alaska, New York, and Oregon that merely viewing images does not constitute possession. We are not persuaded.

The cases on which the defendant relies involve thumbnail or cache images automatically saved to a defendant's device when viewing or accessing the original images on the Internet. See *Worden* v. *State*, 213 P.3d 144, 147 (Alaska App. 2009) ("even though the images . . . were found amongst the cache files on . . . [the defendant's] computer, there was no indication that [the defendant] had any intent to permanently store the images—his intent was simply to view the images on his computer screen for the time he was at a given website"); *People* v. *Kent*, 19 N.Y.3d 290, 301, 970 N.E.2d 833, 947 N.Y.S.2d 798 (2012) ("regardless of a defendant's awareness of his computer's cache function, the files stored in the cache may constitute

evidence of images that were previously viewed; to possess those images, however, the defendant's conduct must exceed mere viewing to encompass more affirmative acts of control such as printing, downloading or saving"); *State* v. *Barger*, 349 Or. 553, 567, 247 P.3d 309 (2011) ("navigating to a website and bringing the images that the site contains to a computer screen—are not acts that the legislature intended to criminalize").

The present case differs from these three out-of-state cases in several respects. As previously discussed, the defendant was charged with possession of the original images, and not thumbnails, and the state presented sufficient evidence from which a jury reasonably could have found that the original images were transferred from another Apple device to the defendant's iPad through the File Browser application and not through the Internet. Thus, the defendant's conduct involved more than merely viewing the images on a website. The out-of-state cases on which the defendant relies are factually distinguishable, and, therefore, we reject the defendant's argument.

Accordingly, viewing the evidence in the light most favorable to sustaining the verdict and the inferences reasonably drawn therefrom, we conclude that the jury reasonably could have found that the cumulative force of the evidence established guilt beyond a reasonable doubt with respect to the charge of possession of child pornography in the first degree. Therefore, the evidence was sufficient to support the defendant's conviction of that charge.

The judgment is affirmed.

In this opinion the other judges concurred.